**In re Roy C. MARKEY, Debtor.**

**Bankruptcy No. SL87–03200.**

United States Bankruptcy Court, W.D. Michigan, S.D.

Sept. 14, 1992.

---

740

Dood & Wilson (Candice L. Wilson, argued), Lansing, Mich., for debtor Roy C. Markey.

Fowler, Tuttle, Clark & Coleman (David G. Coleman, argued), Lansing, Mich., for respondents Bessie Bradish and Laurence D. Fowler.

## AMENDED OPINION AND ORDER GRANTING SANCTIONS PURSUANT TO 11 U.S.C. § 362(h)

JO ANN C. STEVENSON, Bankruptcy Judge.

### I.

This proceeding arises in a case referred to this court by the Standing Order of Reference entered in this district on July 24, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2). *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986). The court is authorized to enter final judgment in this proceeding subject to the right of appeal provided by 28 U.S.C. § 158(a).

The following constitutes the court's findings of fact and conclusions of law in accordance with FED.R.BANKR.P. 7052. In reaching its determination, the court considered the demeanor and credibility of the three witnesses who testified, Bessie Bradish, Roy C. Markey and Laurence D. Fowler. The admitted exhibits, whether or not each specific item of evidence is referred to

in the court's decision, were also considered. Although no request to admit the following items into evidence was received, they were also considered as they were presented as part of the court record with neither party objecting thereto: (1) State Court Complaint and Answer; (2) Interrogatories and Answers thereto; (3) the Motion for Summary Disposition and brief in support filed by Mrs. Bradish in the state court case; (4) the transcript of proceedings in front of Ingham County Circuit Court Judge James R. Giddings on Mrs. Bradish's motion for summary disposition; and (5) the transcript of proceedings in front of United States Bankruptcy Judge James D. Gregg on Mrs. Bradish's motion for lift of stay in the Betty Markey case.

This contested matter involves the most egregious series of violations of the automatic stay ever witnessed by this judge. This case was commenced by the filing of an involuntary chapter 7 petition against the Debtor, Roy C. Markey, on January 1, 1987. Mr. Markey filed a voluntary petition under chapter 11 on January 6, 1988. At Mr. Markey's request the case was converted to a chapter 7 proceeding on December 12, 1989, and remains pending today. Prior to the September 10, 1992 hearing Mr. Markey represented himself in chapter 7, and has done a capable job within the limitations of a layperson with little bankruptcy experience.

The Debtor and his wife, Betty Markey, are the vendees in a land contract to purchase their home located at 1973 Hagadorn Road, Mason, Michigan. This home was scheduled by Mr. Markey as being property by the entireties and therefore exempt under state law.

The vendor on the land contract is respondent Bessie Bradish. In October 1990, after bankruptcy proceedings had been instituted, the Markeys had been in default under the land contract for some six months. The court finds that Mrs. Bradish, an elderly widow, appears to have little business experience and little or no understanding of legal matters. Wisely, she recognized that she needed assistance of counsel. She turned to respondent Laurence D. Fowler, an attorney of some 30 years experience in the practice of law. Mrs. Bradish and Mr. Fowler both testified that she informed him of the bankruptcy proceedings at the time she retained him. By accepting Mrs. Bradish's case, Mr. Fowler held himself out as being competent to practice bankruptcy law.

Shortly after being retained Mr. Fowler filed a motion for relief from stay in this case, which was date stamped by the clerk of the court as received on October 29, 1990. The parties agree that the clerk of the court advised Mr. Fowler that the matter could not be set for hearing because it was not accompanied by the required $60.00 filing fee. They further agree that the fee was never paid nor was a hearing requested and thus scheduled.

Shortly after being retained Mr. Fowler contacted Peter Teholiz, attorney for the chapter 7 trustee in Mr. Markey's case. Mr. Fowler provided Mr. Teholiz with a copy of a land contract which showed only Mr. Markey as vendee. As best the court can surmise, this land contract may have been superseded by a later document showing both Mr. Markey and his wife as vendees. In any event, Mr. Fowler testified that Mr. Teholiz indicated an intent to verify whether the property was held solely by Mr. Markey. Mr. Teholiz apparently told Mr. Fowler that if this were the case the property would be administered through the bankruptcy estate and Mrs. Bradish would be paid upon sale.

Based upon this conversation, Mr. Fowler stopped pursuing his motion for relief from stay. In a later conversation with Mr. Teholiz, Mr. Fowler learned, however, that the estate would not be asserting an interest in the property. Apparently there was some discussion between the attorneys regarding *In re Terrell*, 892 F.2d 469 (6th Cir.1989), as to the effect of the possible deemed rejection of the Bradish–Markey land contract pursuant to 11 U.S.C. § 365(d)(1).

■ Mr. Fowler's next action borders on the unbelievable. He testified that he did not read the *Terrell* case. Nor did he recommence lift of stay proceedings. In-

stead, based upon Mr. Teholiz' statements he assumed that an order of abandonment would soon enter. This assumption is an incorrect reading of *Terrell*. That opinion merely holds that a land contract is an executory contract subject to the dictates of § 365. Thus if the trustee fails to assume an executory contract within 60 days of the filing or of conversion to chapter 7 the contract will be deemed rejected. *Terrell* does not hold that upon rejection of the land contract the property subject to the contract is abandoned. In *Ben–Dak Investment Co. v. Vertich (In re Vertich)*, 5 B.R. 684, 6 B.C.D. 846 (Bankr.D.S.D.1980) the bankruptcy court deemed that the chapter 7 trustee had rejected a Contract of Deed under § 365(d)(1). Seeking to foreclose on the Contract of Deed, the creditor correctly filed a motion for relief from stay. As Judge Ecker explained:

> The rejection of the contract, however, did not waive any interest in the property Debtors had under equitable or state law as a result of the contract being terminated and the subsequent foreclosure, the Trustee succeeding to any such rights of the Debtors.

*Id.* 5 B.R. at 686, 6 B.C.D. at 847. Although the stay was lifted, the court specifically stated that the equity of redemption remained property of the estate which the trustee could protect by intervening in state court or by obtaining a purchaser.

■ In the usual case, as in *Vertich*, when an executory contract is rejected, any residual rights the debtor would have had in the breached contract remain property of the estate. In this instance, however, the property which was the subject of the contract was exempt, and therefore those residual rights, *i.e.* the rights of possession and of redemption in any foreclosure, remained the exempt property of Mr. Markey.

■ Even had the trustee abandoned the estate's interest, Mr. and Mrs. Markey still would have retained their interest in

the property. Foreclosure could not proceed until Mrs. Bradish obtained a lift of stay as to Mr. Markey. 11 U.S.C. § 362(a)(5). Mr. Fowler also assumed, erroneously, that abandonment of the property would terminate the automatic stay. As stated in *In re Littke*, 105 B.R. 905, 19 B.C.D. 1487, 1490 (Bankr.N.D.Ind.1989):

> Termination of the estate's interest in property is not the equivalent to a wholesale termination of the automatic stay. Even though a creditor's collateral may no longer be property of the estate, without an order terminating the stay, it is still prohibited until one of the conditions of § 362(c)(2) has been fulfilled. [Citations omitted].

Mr. Fowler did not attempt to obtain a copy of the order of abandonment which he believed would be forthcoming. Mr. Fowler's next action was on February 12, 1991 to serve a notice of foreclosure on Mr. Markey in direct violation of the automatic stay which remained in full force and effect.

■ Although Mr. Fowler assertedly relied a great deal upon the statements made to him by Mr. Teholiz, no attempt was made to produce him at today's hearing. Counsel for Mr. Fowler and Mrs. Bradish proffered a deposition of Mr. Teholiz into evidence, but admitted that they did not attempt to subpoena him to appear in court. Instead they chose to rely upon his deposition because of his busy schedule practicing law, and because of the travel distance between Lansing and Grand Rapids. The court notes that all of the participants in today's hearing except for the judge and court reporter traveled from Lansing to be here, and that Mr. Teholiz, who appears regularly in front of this court, is capable of doing so as well. Mr. Teholiz was therefore not unavailable as that term is defined in FRE 804(a). Accordingly, the court refused to admit the deposition, which is hearsay. *See* FRE 804(b)(1).[1]

---

1. The court also notes that under Fed.R.Bankr.P. 7032 and Fed.R.Civ.P. 32, made applicable to this proceeding under Fed.R.Bankr.P. 9014, deposition testimony may also be used at trial under certain circumstances. The court finds that those circumstances were not present in this case.

Mr. Markey responded to the February 12, 1991 Notice of Foreclosure by tendering a check for the arrearages on the land contract to Mrs. Bradish. In a letter accompanying the check Mr. Markey also offered to pay Mrs. Bradish $400.00 to compensate her for legal costs if she dismissed any legal proceedings then pending:

I understand that legal action is pending and this payment enclosed should let you cancel that. Drop me a note, or call me at [phone number] that you have cancelled the legal action and I will send you a check for $400.00 that should cover your attorney cost.

Exhibit 1. Of course, because the stay was still in effect, Mrs. Bradish was under a duty to dismiss the foreclosure without compensation from Mr. Markey. Mrs. Bradish, who clearly did not understand this or any other of the legal complexities of bankruptcy, consulted with Mr. Fowler regarding this offer. On his advice, the offer was rejected and Mr. Markey's check returned. Exhibit 2.

On March 4, 1991 Mr. Fowler commenced a foreclosure suit against Mr. Markey. In ¶ B of his prayer for relief Mr. Fowler requested, "That if upon sale of the premises a sufficient sum is not realized, the Plaintiff may have a judgment for the deficiency." On April 4, 1991 an answer with affirmative defenses was filed by Mr. Markey. Affirmative defense number 2 reads as follows: "This action is stayed by the automatic stay of bankruptcy, In re: Roy C. Markey, Debtor, United States Bankruptcy Court for the Western District of Michigan, Case No. SL87–03200."

Attorney Fowler *continued* pursuit of this action after receiving this renewed assertion of the automatic stay. Two sets of interrogatories were served upon Mr. Markey. In one set Mr. Markey was asked whether he contended that the automatic stay was still in effect. He *again* asserted that he did, and that it was his understanding that no relief from stay had been granted.

In December of 1991 Mr. Fowler filed a motion for summary disposition in the state court action. In the supporting brief Mr. Fowler states, "Defendant Roy C. Markey originally filed bankruptcy, however, stay in Bankruptcy has been listed [sic] insofar as this property is concerned." On December 9, 1991, between the filing of this motion and hearing, Mrs. Markey filed bankruptcy and her case was assigned to the Hon. James D. Gregg. Mr. Markey testified that the only reason Mrs. Markey filed bankruptcy was to halt Mr. Fowler's persistent efforts to foreclose on their home. Their hope was that the automatic stay in Mrs. Markey's case would prove to be more effective than the stay in Mr. Markey's case.

Despite the imposition of yet *another* automatic stay, the hearing on the motion for summary disposition went forward nonetheless. At that hearing Mr. Fowler's partner who argued the motion asserted that the stay had been lifted in the Roy Markey case. Judge Giddings refused to grant the motion based upon the stay in Mrs. Markey's case.

On April 3, 1992 a hearing was held in Mrs. Markey's bankruptcy case on Mrs. Bradish's motion for relief from stay. In that hearing the following exchanges took place between Mr. Fowler and Judge Gregg:

MR. FOWLER: ... We asked Judge Stevenson for a [relief from] stay to permit us to proceed in Ingham County Circuit Court on a foreclosure action. She granted the relief from stay and we got started again in Circuit Court and then Betty Markey filed bankruptcy and she has a dower interest in the property.

.    .    .    .    .

THE COURT: Judge Stevenson's already granted relief from stay on the merits in the Roy Markey case?

MR. FOWLER: Yes.

April 3, 1992 Transcript at 2.

THE COURT: Mr. Fowler, was that argued in front of Judge Stevenson?

MR. FOWLER: Yes.

April 3, 1992 Transcript at 4. Based on these statements, Judge Gregg lifted the stay.

Becoming increasingly frustrated with being denied the benefit of the protection of the automatic stay Mr. Markey filed a

motion to compel the Trustee to assume the land contract on his home. This motion was denied at the May 21, 1992, and an order was submitted by Mr. Teholiz to this effect. That order also provided that the property was abandoned and that the automatic stay was lifted. This court signed that order on June 5, 1992.

In the meantime, on June 1, 1992, Mr. Markey filed the instant motion to hold Mr. Fowler and Mrs. Bradish in contempt for violation of the automatic stay. This matter first came on for hearing in Lansing on June 11, 1992. At that hearing, the court directed Mr. Fowler to take no further action in state court pending resolution of this matter. This directive was memorialized in the court's order dated June 25, 1992 which reinstated the automatic stay.

## II.

This brings us to this contested matter. Of those protections afforded by the Bankruptcy Code to a debtor the automatic stay is likely the most beneficial as it gives the debtor immediate relief from the continuation or commencement of those proceedings aimed at collecting prepetition debts.

■ The automatic stay of 11 U.S.C. § 362 arises as a matter of law upon the filing of a petition for relief under Title 11. Section 362 contains eight very specific sections which delineate prohibited actions. Based upon the testimony of the witnesses, the evidence submitted, and the court's review of the file, three paragraphs of subsection 362(a) are directly at issue here:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

.    .    .    .    .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and]

.    .    .    .    .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

The stay is not only created automatically, it may also terminate automatically:

(c)(1) the stay of an act against the property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and (2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under Chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

■ As of the September 10, 1992 hearing none of the above had occurred; thus the stay remained in effect until entry of the June 5, 1992 abandonment order and was reinstated as a result of the court's June 25, 1992 order.

■ Section 362 of the Bankruptcy Code states not only the scope and duration of the automatic stay but also provides a meaningful remedy for its violation in subsection (h):

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

Violations of stay may also be redressed through contempt proceedings. *In re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir.1987); *In re Schewe*, 94 B.R. 938, 946–48 (Bankr.W.D.Mich. 1989); *In re Wagner*, 74 B.R. 898, 902–903 (Bankr.E.D.Pa.1987); and *In re Taco Ed's, Inc.*, 63 B.R. 913, 931 (Bankr.N.D.Ohio 1986). The Sixth Circuit has affirmed this concept in *Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir.1988).

■ Before turning to the merits of the motion presently before the court it is necessary to first address the June 5, 1992 order of abandonment. Based upon the testimony the court finds that at the time Mr. Markey filed his motion to compel the Trustee to assume the land contract on his house, and the subsequent hearing thereon, Mr. Markey was laboring under the misconception that the stay had been lifted. The court further finds that this misconception was the direct product of the repeated violations of stay by Mr. Fowler which occurred in this case. Having been told a number of times that the stay had been lifted, Mr. Markey explained that although he never consented to a lift of stay, had neither been given notice of nor attended any hearing on a lift of stay motion, nor seen an order lifting the stay, he assumed it could have happened without his knowledge. Finally the court notes that as no motion for relief from stay was pending at that time, and Mr. Markey did not consent to stipulate to that relief, the language in the order lifting the stay as to Mr. Markey's interest in the property was gratuitous. Therefore on its own motion the court sets aside that portion of the June 5, 1992 order which lifted the stay as to Mr. Markey's interest for the reason that it was procured through misrepresentation. *See* FED.R.BANKR.P. 9024; FED.R.CIV.P. 60(b).

### III.

It is undisputed that the numerous acts taken by Mr. Fowler on behalf of Mrs. Bradish were in violation of the stay. The court thus moves directly to the issue of whether the violation was willful and therefore compensable by actual damages under 11 U.S.C. § 362(h). The court finds that Mr. Fowler's acts were willful, but that Mrs. Bradish is not similarly culpable.

■ In order for the court to determine that conduct is willful two predicates must be satisfied. First, the act taken in violation of the stay must have been deliberate. Second, the party must be aware of the bankruptcy. *Littke, supra* at 1490–91. A finding that the action was taken with an intent to violate the stay is not necessary. Courts have equated the knowledge that a bankruptcy case is pending with knowledge that the stay is in force. *See In re Budget Service Co., supra* at 293.

■ The court finds that Mr. Fowler's acts were clearly deliberate. It has not been contended that he did not intend to commence suit against Mr. Markey or to pursue that suit. Mr. Fowler also had knowledge of the stay. Mr. Fowler admitted knowledge of the filing of bankruptcy, and even evidenced his actual knowledge of the stay by filing a motion for relief from stay. At best his subsequent actions were taken in reliance upon a series of erroneous assumptions regarding bankruptcy law which Mr. Fowler did not premise upon the provisions of the Bankruptcy Code, reported decisions of other courts, or written orders of this court, but only upon the comments of another attorney representing another party in the case with an interest different and potentially adverse to that of Mrs. Bradish, Mr. Fowler's client.

■ It is axiomatic that a court speaks through its orders. Even assuming that Mr. Teholiz indicated that he intended to abandon the estate's interest in the property the abandonment could not occur until there was a court order to that effect. If Mr. Fowler chose to rely upon Mr. Teholiz' statements and a series of unfounded assumptions flowing from those statements instead of a written order of the court, he did so at his own peril. We find this behavior particularly egregious because Mr. Fowler always had the ability to quickly ascertain the status of the case. A review of the approximately six page court docket covering the period from December 1989 forward would have instantly confirmed that no order lifting the stay or abandoning either the estate's or Mr. Markey's interest in the property had been entered. Moreover, we note that the property which Mr. Fowler was so relentlessly attempting to recapture in violation of the stay was not only Mr. and Mrs. Markey's home but also had an equity of approximately $125,000 according to statements made on the record to Judge Gregg.

A separate, intentional act of Mr. Fowler which was clearly in violation of the stay was the filing of a state court foreclosure complaint which also sought a money judgment in the event that the property foreclosed upon did not satisfy the balance owed. Mr. Fowler's only explanation for this conduct was that he knew that the Markeys had ample equity in the house to pay the outstanding balance and that therefore there would be no deficiency. The court is not impressed with this argument. Mr. Fowler filed a complaint to collect a contingent prepetition debt, the contingency being that the security did not satisfy the claim. To accept Mr. Fowler's justification for this conduct would be an invitation to further violations of stay whenever the possibility of collection is remote. This pleading sought relief explicitly barred by 11 U.S.C. § 362(a)(1) and (b) and is direct evidence of a willful violation of stay.

The same cannot be said of Mrs. Bradish. Although she had notice of the bankruptcy the only act she took was to consult with her attorney. While it generally is true that a party may not use his or her good faith reliance upon counsel to justify a violation of stay, *see, e.g., In re Taylor*, 884 F.2d 478 (9th Cir.1989), the court believes a limited exception is warranted in this case. Based upon Mrs. Bradish's demeanor as a witness and upon her testimony the court finds that she has little if any knowledge of the workings of the legal system and in all likelihood has had little need for such knowledge. When faced with a legal problem she sought the advice of counsel and relied upon that advice. Under the circumstances the court believes that Mrs. Bradish acted in a prudent manner and that there is nothing to be gained by sanctioning her.

Having determined that Mr. Fowler acted willfully in violation of the stay, the court awards damages in the amount of $5,750.00 which the parties stipulated were the reasonable attorneys fees incurred by Mr. Markey as a result of the violation of stay, and $1,400.00 which the court finds accurately represents Mr. Markey's lost wages for work missed due to attendance at court hearings. No evidence was presented as to the other elements of compensatory damages and therefore the court awards only these two items against Mr. Fowler.

## IV.

The court now turns to the issue of whether punitive damages are appropriate.

> The automatic stay is fundamental to the proper operation of the bankruptcy laws. Its violation "strikes at the heart of the Bankruptcy Code's mechanisms for debtor rehabilitation and for equity amongst creditors; [a] willful violation is an extremely serious matter to be dealt with severely." *In re Cafe Partners/Washington 1983*, 81 B.R. 175, 182 (Bankr. D.D.C.1988).

*Littke, supra* at 1491.

The Sixth Circuit in *Archer, supra* at 500 stated that in certain circumstances punitive damages may be awarded and charged the bankruptcy court as follows:

> On remand the bankruptcy court should conduct a new hearing, but only on the issue of damages as the bank has not challenged the court's conclusion that it willfully violated the automatic stay. This hearing should be conducted after adequate notice has been afforded to both parties. Following this hearing, the bankruptcy court, bearing in mind that "11 U.S.C. § 362(h) requires a finding of actual injury," [citation omitted], should award actual damages for the amount of losses suffered by the Archers as a result of the bank's misconduct. If the bankruptcy court believes that the amount of such actual damages is insufficient to deter the kind of deliberate and repeated violations of the automatic stay which are evident in this case, the bankruptcy court is free to impose an appropriate amount of punitive damages. We leave that to the bankruptcy court's discretion.

(Footnote omitted). In this case, the violations of stay were certainly repeated. The indifference which Mr. Fowler displayed toward the automatic stay in this case indi-

cates that merely imposing actual damages will not adequately deter such conduct in the future. Several facts support this conclusion.

The court starts with the fact that Mr. Fowler commenced state court litigation without having first obtained relief from stay. This fact has been previously addressed and is arguably sufficient misconduct standing alone to warrant punitive damages. The next occasion Mr. Fowler had to reconsider his course of action occurred when he received Mr. Markey's answer. At that point Mr. Fowler had the statements of Mr. Teholiz, from which he made the far leap that stay had been lifted, balanced against the later answer filed by Mr. Markey's attorney stating that the stay was in effect. Even if it could be assumed that Mr. Fowler's previous conduct could have been excused, when faced with conflicting statements by two other attorneys, Mr. Fowler should have rechecked his "facts" by confirming with the bankruptcy court that the stay had been lifted. Instead he blazed ahead. Another warning was received in the answers to interrogatories. This he also ignored.

Equally troubling are his comments on the record to Judge Gregg. In that hearing he made a number of misrepresentations that were clearly unethical. Official Comment to Michigan Rule of Professional Conduct 3.3, *Candor Toward Tribunal,* states as follows:

> [A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.

In this case statements were made on the record in open court to another judge of this court which could not be said to be based upon any inquiry into the facts of the case. It was a blatant and admitted falsehood to state to Judge Gregg that this judge had held a hearing in which relief from stay had been granted. Implicit in these statements was a representation that Mr. Fowler was present at this fictional hearing. This court does not believe it is appropriate to award damages in compensation for Mr. Fowler's sanctionable misconduct in front of Judge Gregg or, for that matter, in front of Judge Giddings. The court further does not address the question whether Mrs. Markey also has a claim for violation of stay pursuant to 11 U.S.C. § 362(h). However, that conduct is relevant in examining the deliberate, unwarranted and egregious nature of Mr. Fowler's conduct for purposes of fashioning a remedy under § 362(h).

This court determines that an award of $12,500.00 in punitive damages against Mr. Fowler for repeated bad faith violations of stay is appropriate. *Cf. Bank of Boston v. Baker (In re Baker),* 140 B.R. 88, 90–91 (D.Vt.1992) ($10,000.00 award of punitive damages appropriate for willful automatic stay violation repossessing debtor's automobile).

For the foregoing reasons,

IT IS ORDERED that judgment is entered against respondent Laurence D. Fowler (P13604) for compensatory damages in the amount of $7,150.00 in favor of Debtor Roy C. Markey;

IT IS FURTHER ORDERED that judgment is entered against respondent Laurence D. Fowler (P13604) for punitive damages in the amount of $12,500.00 in favor of Debtor Roy C. Markey;

IT IS FURTHER ORDERED that the automatic stay shall remain in full force and effect until such time as it is terminated by operation of 11 U.S.C. § 362(c) or by further order of this court;

IT IS FURTHER ORDERED that pursuant to *Smith v. First America Bank,* 876 F.2d 524 (6th Cir.1989) all actions taken in violation of the stay by Mr. Fowler and Mrs. Bradish, including but not limited to the commencement and continuation of state court proceedings, are void *ab initio;*

IT IS FURTHER ORDERED that pursuant to 11 U.S.C. § 105(b) Mrs. Bradish is stayed from taking any proceedings to enforce the land contract against Mr. Markey until such time as the judgment against Mr. Fowler is satisfied in full, notwith-

standing any termination of the automatic stay;

IT IS FURTHER ORDERED that a judgment of no cause of action is entered as to respondent Bessie Bradish;

IT IS FURTHER ORDERED that this court shall retain jurisdiction to ensure that the terms of this judgment are fully enforced; and

IT IS FURTHER ORDERED that a copy of this opinion and the transcript of today's hearing shall be served by the court upon the State Bar of Michigan Attorney Discipline Board, the Hon. James D. Gregg, and the Hon. James R. Giddings.