**In re Paul J. ATKINS and Julie J. Atkins, Debtors.**

**Paul ATKINS, Plaintiff,**

v.

**Juan MARTINEZ and Weinblatt and Davis, Defendants.**

Bankruptcy No. 3–93–5344.
Adv. No. 3–94–045.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Nov. 4, 1994.

Joseph W. Dicker, Keenan & Katkov, Minneapolis, MN, for plaintiff.

Juan J. Martinez, Weinblatt & Associates, St. Paul, MN, for defendants.

## MEMORANDUM TO ORDER OF SEPTEMBER 30, 1994

GREGORY F. KISHEL, Bankruptcy Judge.

On September 30, 1994, the Court entered an order denying the Defendants' motion for summary judgment, and granting the Plaintiff's motion for partial summary judgment. Pursuant to FED.R.CIV.P. 52(a), *as incorporated by* FED.R.BANKR.P. 7052, this memorandum sets forth the findings of fact and conclusions of law on which that order was based.

### NATURE OF PROCEEDING

The Debtor filed a voluntary petition for relief under Chapter 7 on December 11, 1993. Prior to the Debtor's bankruptcy filing, Dr. and Mrs. John Marta had obtained a money judgment against him in the Minnesota State District Court for the Second Judicial District, Ramsey County. Defendant Weinblatt and Davis, a St. Paul law firm, represented the Martas in that lawsuit. Defendant Martinez, an attorney employed by that firm, was the Martas' main counsel of record.

Through this adversary proceeding, the Debtor seeks an adjudication that the Defendants willfully violated the automatic stay of 11 U.S.C. § 362(a) and the discharge injunction of 11 U.S.C. § 524(a), as a result of events that occurred during post-judgment collection in the lawsuit: under color of a bench warrant that had been issued at the Martas' instance and on a motion presented by the Defendants, the Ramsey County Sheriff arrested the Debtor and held him in jail overnight, after the debt evidenced by the Martas' judgment had been discharged in bankruptcy. As relief, the Debtor seeks an award of damages against the Defendants.

In their answer, the Defendants deny various fact allegations of the Debtor's complaint. The gist of their pleaded defense is

that they owed no duty to the Debtor in connection with the pendency of the bench warrant, even after his bankruptcy filing, and therefore could not be adjudged to have violated the automatic stay and discharge injunction.

## MOTIONS AT BAR

Both parties have moved for summary judgment pursuant to FED.R.BANKR.P. 7056.[1] The Debtor seeks partial summary judgment, on the issue of the Defendants' liability alone. He acknowledges that the amount of a damage award, if he is entitled to one, must be proved up at trial.

In response, the Defendants move for summary judgment in their favor on the same issue. Since a grant of their motion would obviate the need for a determination of damages, the Defendants' motion is properly characterized as one for full summary judgment.

 While the parties do not submit their motions on a stipulation of fact, both counsel state that they believe there is no genuine issue of material fact on the question presented. Such a mutual acknowledgement is not binding on the Court, but this one ends up being correct: in their entirety, the affidavits submitted for the respective motions, plus the concessions and acknowledgements made by counsel at the hearing, show that there is indeed no triable fact question going to the issue of liability. This issue, then, is properly before the Court for decision on a

summary basis. *W.S.A., Inc. v. Liberty Mut. Ins. Co.*, 7 F.3d 788, 790 (8th Cir.1993); *Coca–Cola Bottling Co. v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440 (8th Cir.1992); *In re Sunde*, 149 B.R. 552, 554 (Bankr.D.Minn.1992); *In re Ramy Seed Co.*, 57 B.R. 425, 430 (Bankr.D.Minn.1985).

## FINDINGS OF FACT

 As they emerge from the record, the uncontroverted facts[2] are as follows:

1. Before his bankruptcy filing, the Debtor was engaged in the sale and installation of tile and other flooring products through his business corporation, Spectrum Tile and Marble, Inc., ("Spectrum").

2. At some time in 1991 or before, the Martas contracted with the Debtor and/or Spectrum, for the purchase and installation of custom tile at their residence.

3. As a result of a dispute arising out of the Debtor's performance under the contract, he and Spectrum sued the Martas in the Ramsey County District Court. Apparently, he sought to recover the sum of money he alleged that he and/or Spectrum was owed under the contract.

4. In November, 1991, the Martas retained the Defendants to represent them in this lawsuit.[3] The Defendants interposed an answer and counterclaim on behalf of their clients.

---

1. This rule makes FED.R.CIV.P. 56 applicable to adversary proceedings in bankruptcy. In pertinent part, FED.R.CIV.P. 56(c) provides that, upon a motion for summary judgment,

 [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

2. Many of these facts touch on various events in the state-court lawsuit between the Martas and the Debtor. In his affidavit, the Debtor recounted a few of the aspects of the litigation, but so vaguely as to prevent an accurate recapitulation of how it had gone forward. Though Martinez did not attach any pleadings or court documents to his affidavit, he recounted relevant dates and

 identified procedures and judicial actions with precision. The Debtor did not make a responsive affidavit to rebut any of these "procedural" facts; as a result, they should be found as posited by the Defendants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *In re Johnson*, 139 B.R. 208, 214 (Bankr.D.Minn.1992); *In re Mathern*, 137 B.R. 311, 314 (Bankr.D.Minn. 1992), aff'd, 141 B.R. 667 (D.Minn.1992) (to defeat movant's argument that there is no genuine issue of material fact, respondent to motion for summary judgment must produce significant, probative evidence that would support fact findings to the contrary of those urged by movant).

3. Martinez's affidavit recites November 21, 1992 as the date of the retention. This undoubtedly is a typographical error, since the ensuing paragraphs in his affidavit refer to his involvement in the litigation during and after July, 1992.

5. The Debtor did not serve or file any pleading responsive to the counterclaim. The Defendants made a motion for a default judgment on their clients' counterclaim.

6. The Ramsey County District Court granted the motion; on November 29, 1992, it entered judgment against the Defendant[4] in the sum of $6,342.39.

7. Approximately two months later, Martinez commenced post-judgment discovery proceedings against the Debtor, as a part of the process to collect on the Martas' judgment. On September 23, 1992, he served the Debtor by mail with interrogatories and a notice of the taking of the Debtor's deposition, both in aid of execution on the judgment.

8. The Debtor never responded to the interrogatories in any way. He failed to appear at the noted deposition.

9. On October 29, 1992, Martinez brought on a motion to compel the Debtor to respond to the discovery. The Debtor failed to appear at the hearing on the motion.

10. By an order entered December 9, 1992, the Ramsey County District Court ordered the Debtor to appear for deposition at the offices of Weinblatt and Davis on December 16, 1992, and to answer the interrogatories by the same date.

11. The Debtor did not respond in any way to the order compelling discovery.

12. On January 25, 1993, Martinez brought a motion pursuant to MINN.STAT. § 588.01, for an order adjudging the Debtor in contempt of court for his refusal or failure to comply with the order compelling discovery.

13. The Defendant failed to appear at the hearing on the contempt motion. On February 22, 1993, the Ramsey County District Court entered an order finding him in contempt of court, and requiring the issuance of a warrant for his arrest.

14. The Debtor was aware of the issuance of this order.

15. The bench warrant was not executed before October 12, 1993.[5] On that date, the Debtor filed his Chapter 7 petition.

16. On the Debtor's Schedule F, Martinez was duly noted as counsel for the Martas. He received a copy of the clerk's notice of the commencement of the Debtor's bankruptcy case in due course.

17. Upon receiving the notice, Martinez placed it in his file. He does not deny that he understood the meaning of the notice. He did not review his file at that time, and he did not remember that the bench warrant was still outstanding.

18. The Martas did not timely commence an adversary proceeding to have the Debtor's debt to them found nondischargeable under 11 U.S.C. § 523(c).

19. By an order entered on February 8, 1994, the Debtor received a discharge under Chapter 7.

20. The warrant remained unexecuted until February 23,[6] 1994. On that date, a deputy from the Ramsey County Sheriff's Department appeared at the Debtor's residence, meeting him as he drove up. She issued him a citation for driving without a license,[7] and then arrested him under color of

---

4. It is unclear whether Spectrum was named as a joint judgment debtor. In his affidavit, the Debtor states that he "believed at the time [that the judgment] was improper because the claim was against [his] former company"—the latter, apparently, being a reference to Spectrum. He acknowledges that he never sought relief from the judgment by appeal or post-judgment motion, on this or any other ground.

5. The reason for the non-enforcement does not appear from the record.

6. In his affidavit, the Debtor attested to no date more specific than "[i]n February, 1994 ..." Martinez does not speak to the date on which the warrant was executed, but he does note the date

on which he received notice that the Debtor was in custody—February 24, 1994. Since the Debtor apparently was taken into custody in the evening and remained there overnight, the warrant was executed on February 23.

7. In his affidavit, the Debtor makes various vague fact assertions that suggest that his license had been suspended or revoked as a result of his involvement in an accident at a time that he did not possess statutorily-mandated insurance coverage; that he had known of the suspension or revocation; that he had unsuccessfully attempted to obtain a new license on several occasions; and that "[t]hese circumstances [had been] very troubling to [him]."

the bench warrant issued on the Martas' motion. She explained that she was taking him into custody in connection with a civil matter.

21. After taking the Debtor into custody, the deputy sheriff brought him to the Adult Detention Center of Ramsey County.

22. On February 24, 1994, Martinez received a telephone message from an employee of Ramsey County,[8] advising him that the Debtor was in custody. This employee advised Martinez that if he wished the Debtor to be released he should call the Ramsey County Sheriff.

23. Martinez then called the Sheriff, advising him that the Debtor had filed for bankruptcy and had received a discharge of the debt in question. The Sheriff advised Martinez that he could not release the Debtor unless the order for his arrest were quashed.

24. Martinez then called the law firm with which the Debtor's bankruptcy counsel was associated. He advised Steven Katkov, one of the attorneys in the firm, that the Debtor was in custody.[9] Apparently, Martinez did so to suggest that the Debtor's counsel undertake to have the order quashed. Katkov suggested to him that was Martinez's burden, as Martinez had obtained the order and the issuance of the warrant.

25. Martinez then immediately contacted the clerk of Ramsey County District Court, requested that the order be quashed, and transmitted copies of the initial notice and the discharge order in the Debtor's case to the clerk via telefacsimile. He also contacted the deputy clerk assigned to the judge who had signed the order, and advised that these materials were forthcoming.

26. The clerk of Ramsey County District Court apparently then presented the materials to a judge, who issued an appropriate order.

27. The sheriff then released the Debtor from the Adult Detention Center, some time during the afternoon of February 24.

## DISCUSSION

### I. GOVERNING LAW

■ Once the Debtor filed for bankruptcy relief, he immediately gained the protection of the provision of the Bankruptcy Code that creates the automatic stay, 11 U.S.C. § 362(a).[10] The automatic stay in bankruptcy comes into existence as a matter of law; it is self-effectuating. *Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991); *I.C.C. v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir.1991); *In re Markey*, 144 B.R. 738, 744 (Bankr.W.D.Mich. 1992); *In re Scharff*, 143 B.R. 541, 542 (Bankr.S.D.Iowa 1992). The automatic stay is one of the fundamental debtor remedies under the Bankruptcy Code. Congress fully intended that its scope be broad. H.R.REP. No. 595, 95th Cong. 1st Sess. 340 (1977), U.S. Code Cong. & Admin.News, pp. 5787, 6296, 6297; *Small Business Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989).

**8.** The record does not reveal whether this person was in the office of the sheriff or of the clerk of district court.

**9.** The record suggests that this was the first word as to the Debtor's arrest that his bankruptcy counsel had received.

**10.** In pertinent part, this statute provides as follows:

(a) Except as provided in [11 U.S.C. § 362(b)] ..., a petition filed under [11 U.S.C. §§]301, 302, or 303 ... operates as a stay, applicable to all entities, of—
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code];
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under [the Bankruptcy Code]; [and]

 . . . . .

 (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code] ...
11 U.S.C. § 362(b) sets forth 16 specific types of acts and proceedings that are excepted from the automatic stay, but none of them are applicable here.

■ When the Debtor received a discharge from this Court, he then became protected by the provisions of the "discharge injunction" of 11 U.S.C. § 524(a).[11] The entry of a discharge order terminates the automatic stay, in favor of the discharge injunction. *In re Czuba,* 146 B.R. 225, 228 (Bankr. D.Minn.1992); *In re Brinkman,* 123 B.R. 318, 322 (Bankr.D.Minn.1991).

## II. ISSUES PRESENTED

The gravamen of the Debtor's complaint is straightforward: after being put on notice of his status as a petitioner in bankruptcy and as a discharged debtor, the Defendants failed to take steps to prevent the Ramsey County Sheriff from enforcing the bench warrant that they had obtained on their clients' behalf. He posits that the execution of the warrant was part of a process for the collection of the Martas' debt against him. As such, he argues, it violated both the automatic stay and the discharge injunction.[12] As he would have it, the Defendants' awareness of his status in bankruptcy made their failure "willful" within the meaning of 11 U.S.C. § 362(h) [13] and the caselaw construing § 524(a). Thus, he argues, he is entitled to an award of actual and punitive damages in compensation for his lost freedom and income, the attorney fees he had to incur to obtain his release, and the embarrassment and humiliation he alleges he suffered as a result of his incarceration.

11. In pertinent part, this statute provides:

> A discharge in a case under [the Bankruptcy Code]—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [11 U.S.C. §] 727..... whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..

12. This discussion will assume that both the law going to the automatic stay and that going to the discharge injunction are analytically relevant to the facts at bar. There is something to be said for the proposition that the Debtor's complaint should really sound under only § 524(a). By the time of the unfortunate events in question, the

In turn, the Defendants argue that, as a matter of law, they have no legal liability to the Debtor. They argue several alternative theories. Because of what they do and do not join as issues, the Defendants' arguments afford the most appropriate way to organize this decision.

### A. Exception from Automatic Stay and Discharge Injunction for Contempt Proceedings

The Defendants' first argument is their broadest: in general, they maintain, proceedings against a debtor for an adjudication of contempt of a nonbankruptcy forum are excepted from the automatic stay and the discharge injunction. Thus, as the Defendants would have it, they cannot be held liable to the Debtor for any consequence of their acts or omissions during the post-judgment proceedings in the state court, regardless of their intent in acting or failing to act. They cite two decisions for this proposition: *David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977) (decided under the Bankruptcy Act of 1898) and *In re Dumas,* 19 B.R. 676 (9th Cir. BAP 1982). With all due respect to the courts that rendered these decisions, however, they are not well-founded.

■ The automatic stay is a creature of statute; as such, its scope is governed wholly by the language of 11 U.S.C.

> automatic stay was a thing of the past, and only the discharge injunction operated as a restraint on the Martas and the Defendants. At least in terms of the logic of causality, the injury to the Debtor should be attributed only to a violation of the restraint that was in effect when the injury was inflicted. A sort of "but-for" causality can be imposed to opposite effect, of course: had Martinez taken positive action to halt the warrant process while the automatic stay was in effect, the Debtor would not have been arrested months later. Neither side refined its analysis enough to take notice of this abstruse point, however—so, rather than make a substantive ruling on an issue not raised by the parties, the Court is applying both §§ 362 and 524.

13. This statute provides as follows:

> An individual injured by any willful violation of a stay provided by [11 U.S.C. § 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**1006**

§§ 362(a)–(b). The automatic stay of § 362(a) lies unless one of the specific exceptions of § 362(b) is applicable. *In re Blarney, Inc.*, 53 B.R. 162, 164 (Bankr.D.Minn. 1985). Proceedings for constructive civil contempt are not among these exceptions. The only one that could conceivably apply is that of § 362(b)(1): "the commencement or continuation of a criminal action or proceeding against the debtor." That provision, obviously, would afford an exception from the automatic stay—but only for formal proceedings for *criminal* contempt. As the Defendants acknowledge, they obtained the bench warrant to compel the Debtor's attendance before a judge of the state court on their clients' motion to compel discovery. Ultimately, they sought to force his attendance at a deposition in litigation between private parties. *They did not seek or obtain the* warrant to vindicate the state court's authority by punishing him for his past violation of its order. This is the telling distinction between civil and criminal contempt. *E.g., Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

 Ultimately, the breadth of § 362(a)(1) drives the conclusion to this issue, as to the automatic stay. *Under this provision's language, a debtor in bankruptcy is protected from the* "commencement or continuation" of *any* "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [debtor's bankruptcy] case." *See In re Panayotoff,*

140 B.R. 509, 511 (Bankr.D.Minn.1992). Section 362(a)(1) clearly encompasses all claims, causes of action, or rights to any form of civil legal relief that are founded on factual bases that arose pre-petition. "Every proceeding of a judicial or quasi-judicial nature is affected." *In re Joe DeLisi Fruit Co.*, 11 B.R. 694, 695 (Bankr.D.Minn.1981). This has to include proceedings for adjudications of civil contempt, where the act in question is the debtor's alleged pre-petition violation of a court order.

 The automatic stay, then, restrains all persons and entities from initiating civil contempt proceedings against a debtor in bankruptcy. It continues to do so until the bankruptcy court grants relief from the stay, or until the stay terminates by operation of 11 U.S.C. § 362(c).[14]

 The issue is a bit more subtle as to the discharge injunction. Sections 524(a)(1)–(2) frame the scope of the permanent restraint in terms of the enforcement of a debtor's personal liability on account of a debt. As to the character of the subject legal proceeding, the scope of this restraint is arguably narrower than the temporary one of the automatic stay.[15] Its consequence, however, is quite clear: any civil court action that is intended to further the collection of a pre-petition debt, or whose legal or practical result will be to accomplish such collection, is enjoined. This is so regardless of how the action is styled in terms of substance, and regardless of its posture as to procedure; regardless of the nominal alignment of the initiating and responding parties; and regardless of the specificity or vagueness of the relief requested in the pleadings or papers that commence the proceeding. It might

**14.** Subject to three exceptions that are not applicable, this statute provides:

(c) . . .

(1) the stay of an act against property of the estate under [11 U.S.C. § 362](a) . . . continues until such property is no longer property of the estate; and

(2) the stay of any other act under [11 U.S.C. § 362](a) . . . continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of [the Bankruptcy Code] concerning an individual or a case under chapter 9, 11, 12, or 13 of [the Bankruptcy Code], the time a discharge is granted or denied.

**15.** As noted earlier—and in some detail in *Panayotoff*, 140 B.R. at 510–511—§ 362(a)(1) restrains *any* judicial proceeding in which a debtor is named defendant or respondent, and does so regardless of the capacity, status, or role on the basis of which the debtor is being sued. Section 524(a), on the other hand, bars only suits to enforce a discharged debtor's personal liability on account of pre-petition debts.

well be that a criminal contempt proceeding can resume after the contemnor receives a discharge in bankruptcy, without a violation of the § 524 injunction, even where the contumacious act occurred pre-petition. Those proceedings in which a private-party complainant seeks or is motivated to collect a pre-petition debt via the contempt adjudication, however, unquestionably fall within the scope of the injunction.

■ Under this framework, then, the Defendants cannot have the benefit of a judicially-crafted exception from the automatic stay and the discharge injunction. The process in which the Ramsey County District Court issued a bench warrant was one for an adjudication of *civil* contempt; it was initiated by a private party, to coerce the Debtor's compliance with his duty to provide discovery responses to the Defendants. In turn, the Defendants had propounded that discovery to aid their use of garnishment or levy to enforce their clients' judgment. There was nothing about the proceeding, really, that implicated the authority of the Ramsey County District Court as a judicial forum. No exception to the automatic stay, statutory or judicially-created, lies for such a proceeding.

### B. Defendants' Duty to Act, or Lack Thereof

The Defendants frame their second line of defense by positing that there was a duty to act to avoid the unfortunate consequences that were visited on the Debtor, and then arguing a particular allocation of the duty. They argue in the alternative: first, that the

automatic stay and discharge injunction did not impose a duty on them to act affirmatively to see that the bench warrant was withdrawn; and, second, that if it did, the Debtor had an independent and supervening duty to see that he was not the victim of the breach of the initial duty on the Defendants.

This is a novel argument; it does not appear to have been raised in any of the published caselaw under the Bankruptcy Code of 1978. The argument is defeated, however, by the basic nature of its subject matter.

■ The automatic stay has its existence by operation of statute. However, pursuant to the statutory provisions that give rise to the various protections of bankruptcy, it is deemed to have been created by a court order.[16] In its turn, the discharge injunction arises from an actual court order, which is entered if there is no timely, sustained objection to the grant of discharge.[17] In both cases, however, the content and consequences of the order are quite specific; the governing statutes, and the discharge order, both set forth in detail the acts and proceedings that are proscribed thereafter.

■ The protections here come about automatically, and in favor of a specified beneficiary. The automatic stay applies "to all entities"; the discharge injunction applies to "any judgment at any time obtained," and to any "action," any "employment of process," or "any act" to enforce the discharged debtor's liability on account of a debt. Given the universal nature of this terminology, it is evasive and disingenuous to argue that,

---

16. One comes to this conclusion only by plumbing the corners of Chapter 3 of the Code, but the conclusion is inescapable. The preamble of 11 U.S.C. § 362(a), of course, provides that "a petition filed under [11 U.S.C. § ] 301 ... operates as a stay ..." In turn, § 301 provides that a voluntary case under the Code "is commenced by the filing with the bankruptcy court of a petition," and that such commencement "constitutes *an order* for relief under" the governing chapter of the Code (emphasis added). The Bankruptcy Court, then, is deemed to have ordered the several sorts of interim relief available to petitioning debtors, and to have done so without the judicial and ministerial formalities of the preparation, execution. and docketing of a separate written document.

17. Thus, the documentary origins and memorializations of the automatic stay and the discharge injunction are somewhat different. The order creating the automatic stay is deemed to have been made coevally with the debtor's petition; it is memorialized solely by the act of the clerk of the Bankruptcy Court in stamping the words "RELIEF ORDERED" on the face of the petition. The discharge is granted by the formal entry of a court order, the content of which recites those provisions of 11 U.S.C. § 524(a) that prescribe the effects of the entry of discharge.

somehow, the Defendants had no obligation to stop collection proceedings they had put into motion before the Debtor's bankruptcy filing.[18] It even more contradicts the basic nature of a petitioning debtor's entitlement to relief to argue that the Debtor had some sort of supervening duty to take additional action to ensure his right to protections that he had already obtained by operation of law. The Defendants' second argument is flatly without merit.[19]

### C. Lack of "Willfulness" in Defendants' Conduct

The Defendants' last avenue of defense is the one most worthy of an extended discussion. The Defendants argue that their conduct, whether characterized as act(s) or omission(s), did not rise to the level of a *willful* violation" of § 362(a), or of the discharge injunction.

■ 11 U.S.C. § 362(h), of course, is the statutory cause of action under which the Debtor proceeds, to vindicate his rights under the automatic stay. By its terms, that statute requires a finding of a "willful" violation, before a court can impose sanctions on a respondent-creditor. The Eighth Circuit has held that the willfulness requirement of this statute is satisfied when the creditor "acts deliberately with knowledge of the bankruptcy petition." *In re Knaus*, 889 F.2d at 775. [20] The element of deliberation that is contemplated here, of course, is the specific intent to proceed with an act, knowing that it is proscribed by a court order.

■ With the intent element of § 362(h) defined as such, it is clear that the Debtor has no right to recover damages from the Defendants under this theory. Martinez's infraction of the automatic stay was an omission, rather than an active commission: he failed to stop a process of debt enforcement that he had lawfully started before the Debtor filed for bankruptcy. The uncontroverted facts show that he did so negligently, and not intentionally; when he received the clerk's notice of the Debtor's case, he simply forgot that the bench warrant was outstanding. Undoubtedly, his only thought at the time was that the Debtor would be granted discharge without objection and his clients would be denied all chance of recovery on their judgment. Clearly, he concluded that there would be nothing further that he could do to advance his clients' pecuniary interests, and that his involvement in the matter was at an end.

Had Martinez been entirely thorough, he would have checked his file to make sure that no process would go ahead on the state-court matter, absent some action on his part. His failure to do so, however, was not the product of a deliberate choice not to act. It was the result of a negligent assumption that the state of affairs was something other than what it really was. Having merely forgotten that his clients had a form of process outstanding against the Debtor, Martinez did not willfully proceed to violate the automatic stay.

18. The Debtor's counsel cites *In re Knaus*, 889 F.2d 773 (8th Cir.1989), for the proposition "that creditors have an ongoing and affirmative duty to terminate collection activity that was in play as of the date of [bankruptcy] filing." This is not accurate. The express rationale of *Knaus*, narrowly framed in explicit fashion, relied on the duty of a creditor to turnover property of the estate that happened to be in its possession as of a bankruptcy filing, as mandated by 11 U.S.C. § 542(a). The adjudication was premised on a violation of 11 U.S.C. § 362(a)(3), which restrains all acts "to exercise control over property in the estate". Such actions are qualitatively and substantively distinct from the ones at issue here—and the Eighth Circuit certainly did not make the sweeping pronouncement in *Knaus* that counsel attributes to it.

19. Section 524(a)(1) operates toward the same result, though from a different perspective. Under its dictate, the Martas' judgment was avoided, to the extent that it was a determination of the Debtor's personal liability to them. Once that happened, there was no predicate adjudication upon which collection process could be used. It beggars the imagination to conceive of how, before or after the fact, the Debtor could be saddled with a duty to stop an illegal act against himself.

20. This definition generally comports with that given to the term "willful", as it appears in 11 U.S.C. § 523(a)(6). *In re Miera*, 926 F.2d 741, 743 (8th Cir.1991); *In re Long*, 774 F.2d 875, 880–81 (8th Cir.1985) (both noting that " 'willful,' standing alone, means intentional or deliberate ...").

The Defendants, then, are entitled to summary judgment on the count of the Debtor's complaint that sounds under § 362(h).

The more challenging question is posed by the Debtor's alternative theory: that the Defendants, by violating the automatic stay and the discharge injunction, may be held liable to the Debtor on a common-law theory. Though the Debtor's counsel never quite articulates it as such, that theory is contempt of court.

■■ To make out a showing of contempt, a movant must demonstrate that the contemnor knowingly violated a specific court order. *In re Weeks,* 570 F.2d 244, 245 n. 1 (8th Cir.1978). *See also Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982); *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 52 (2d Cir.1976); *In re Rubin,* 378 F.2d 104, 108 (3d Cir.1967). Many courts have held that the injunction created by an order granting a discharge in bankruptcy is a specific court order for the purposes of an adjudication of contempt. *E.g., In re Johnson,* 148 B.R. 532, 537 (Bankr.N.D.Ill.1992); *In re Bowen,* 89 B.R. 800, 807 (Bankr.D.Minn.1988); *In re Gallagher,* 47 B.R. 92, 98 (Bankr.W.D.Wis.1985); *In re Holland,* 21 B.R. 681, 689 (Bankr. N.D.Ind.1982); *In re Kaping,* 13 B.R. 621, 622 (Bankr.D.Ore.1981). Others, both before and after the 1984 enactment of 11 U.S.C. § 362(h),[21] have contemplated that the automatic stay, even though created by operation of statute, also equates to a specific court order, the violation of which may merit an adjudication of contempt. *E.g., In re Walters,* 868 F.2d 665, 669 (4th Cir.1989); *In re Grosse,* 96 B.R. 29, 32 (E.D.Pa.1989), *aff'd without opin.,* 879 F.2d 857 (3d Cir.1989), *cert. den.,* 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); *In re Skinner,* 90 B.R.

470, 479 (D.Utah 1988), *aff'd,* 917 F.2d 444 (10th Cir.1990); *Haile v. New York State Higher Educ. Serv. Corp.,* 90 B.R. 51, 55 (W.D.N.Y.1988); *In re Prairie Trunk Ry.,* 125 B.R. 217, 222 (Bankr.N.D.Ill.1991); *In re Jim Nolker Chevrolet–Buick–Oldsmobile, Inc.,* 121 B.R. 20, 22 (Bankr.W.D.Mo.1990); *In re McCullough,* 63 B.R. 97, 98 (Bankr. E.D.Pa.1986); *In re Rhyne,* 59 B.R. 276, 278 (Bankr.E.D.Pa.1986); *In re Marcott,* 30 B.R. 633, 636 (Bankr.W.D.Wis.1983); *In re Porter,* 25 B.R. 425, 426 (Bankr.D.Vt.1982). *See also Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 52 (2d Cir.1976), *cert. den.,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) (decided under Bankruptcy Act of 1898).[22]

Again, given the uncontroverted facts as to Martinez's awareness and intent in connection with the pendency of the bench warrant, the central issue here is legal: may an adjudication of contempt rest on a finding that a contemnor "negligently" or "inadvertently" violated a court order? Put another way, may contempt lie where, though the contemnor intentionally acted or omitted to act, and was on notice of a valid court order, he nonetheless did not realize contemporaneously that the act or omission would violate the order?

■■■ Without citing much authority, the Defendants maintain that they may not be adjudged in contempt absent a showing that they "willfully" violated the order—i.e., that they were not only aware of the order, but proceeded deliberately to violate it. This argument is wrong. As the Supreme Court observed decades ago, an adjudication of civil contempt "is a sanction to enforce compliance [with a court order or decree] ... or to compensate for losses or damages sustained by reason of noncompliance." *McComb v.*

---

**21.** Section 362(h) was enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See* Pub.L. No. 98–353, § 304, 98 Stat. 333, 352 (1984).

**22.** The parties did not raise the issue of whether the enactment of § 362(h) supplanted any general remedy for violation of the automatic stay that may have been available previously under a contempt theory. A few courts have held that it did. *University Medical Center v. Sullivan,* 122 B.R. 919, 932 (E.D.Pa.1990); *In re Red Ash Coal &*

*Coke Corp.,* 83 B.R. 399, 403 (W.D.Va.1988). *See also* discussion in I D. EPSTEIN, S. NICKLES, & J. WHITE, BANKRUPTCY, at 374–375 (1992). Since the parties did not join the issue, and since the existence of an independent ground for an adjudication of contempt under a violation of the discharge injunction is present, the Court has assumed for the sake of the present discussion that the contempt remedy is still available for a violation of the automatic stay.

*Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). An act or omission "does not cease to be a violation of a law and a decree merely because it may have been done innocently." *Id.* Most tellingly, "[t]he absence of willfulness does not relieve [a party violating a court order or decree] from civil contempt." *Id. See also N.L.R.B. v. Ralph Printing & Lithographing Co.,* 433 F.2d 1058, 1061 (8th Cir.1970), *cert. den.,* 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971). Thus, because civil contempt is remedial in nature, "it matters not with what intent the [contemnor does] the prohibited act." *Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir.1985). *See also Commodity Futures Trading Comm. v. Premex, Inc.,* 655 F.2d 779, 785 n. 11 (7th Cir.1981); *N.L.R.B. v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981); *S.E.C. v. Musella,* 818 F.Supp. 600, 606 (S.D.N.Y.1993).[23]

■ This conclusion, then, dictates the outcome of the balance of the parties' cross-motions for summary judgment: the Defendants cannot avoid liability to the Debtor under his contempt theory of recovery,

merely because their violation of the automatic stay and discharge injunction resulted solely from Martinez's negligent failure to ascertain the current status of his clients' collection effort when he was put on notice that the Debtor was in bankruptcy.[24] On the uncontroverted facts, the Debtor has demonstrated that he suffered an injury as a result of the Defendants' violation of the automatic stay and the discharge injunction, and is entitled to judgment on the question of their liability to him. His motion for summary judgment, then, has been granted, and the Defendants' has been denied. This adversary proceeding will go ahead to trial on the issue of damages alone, and a single, final judgment will be entered once the amount of his damages is determined.[25]

---

**23.** To be sure, in a decision on contempt proceedings based on a violation of the discharge injunction, the Eighth Circuit cited certain decisions for the proposition that

> in order to find a person in contempt of court it must be shown that he knowingly and *willfully* violated a specific court order,

*Hubbard v. Fleet Mortgage Co.,* 810 F.2d 778, 781 (8th Cir.1987) (emphasis added). In the same decision, it held that

> "willfulness" in contempt cases " 'means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order.' "

*Id.* (citations from quotation omitted). *Hubbard,* however, came out of proceedings that were commenced originally for an adjudication of *criminal* contempt, 810 F.2d at 780, and which the Eighth Circuit ultimately concluded were "of a dual nature, with both punitive and compensatory purposes," 810 F.2d at 782. An adjudication of criminal contempt can be based only on a finding of willfulness in the violation. *Perry v. O'Donnell,* 759 F.2d at 705. *Hubbard,* then, does not evidence that the Eighth Circuit has chosen to depart from its own precedent, or to deny the basic principles enunciated in *McComb.*

**24.** In at least one respect, it is unfortunate that this characterization must be attached to Martinez's conduct and that this conclusion must be reached. Martinez practices in this Court with some frequency, and has represented both debt-

ors and non-institutional creditors before the undersigned. His demeanor has always been professional, and his work-product of respectable quality. However, this one error on his part, seemingly small, caused a deprivation of liberty to the Debtor. Ultimately, the Debtor's actual damages may not prove to be great in monetary amount—and, in light of his own past lack of responsiveness to the legal system, he should not expect a substantial award of damages in any other form, if any at all. However, the Debtor unquestionably is entitled to redress. It is just a shame for all parties that it will have to come to that.

**25.** In the order of September 30, 1994, the Court disposed of the motions and made the specific adjudications required by those decisions. Entry of judgment, however, was neither directed nor made; in the current posture of this matter, it was not appropriate to accord finality to the determination made on the issue of liability alone. While such a disposition may be made "upon an express determination that there is no just reason for delay," Fed.R.Civ.P. 54(b), *as incorporated by* Fed.R.Bankr.P. 7054(a), the federal trial courts are under a mandate to minimize the chance of piecemeal appeals. Thus, they should defer entry of judgment under such circumstances until all of the issues in suit are adjudicated on their merits. *Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 806–07 (8th Cir.1993).