**In re Christopher and Michelle WALTERS.**

**Michelle WALTERS and Christopher Walters, Plaintiffs,**

**v.**

**SHERWOOD MUNICIPAL COURT and the Honorable Judge Milas Hale, III, Defendants.**

Bankruptcy No. 95–43387S.

Adversary No. 97–4190.

United States Bankruptcy Court, W.D. Arkansas, Little Rock Division.

April 6, 1998.

Jean Madden, Little Rock, AR, for plaintiffs.

Robert Dawson, Little Rock, AR, for defendants.

David Coop, Little Rock, AR, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

■ THIS CAUSE is before the Court upon the trial on the damages arising out of a complaint for turnover. This bankruptcy case was filed on November 9, 1995. The schedules listed a debt to the Sherwood Municipal Court of restitution ordered by the Sherwood Municipal Court. The debt was scheduled as a unsecured priority claim.

The plan, which provided for full payment of this debt, was confirmed on February 23, 1996. Until the filing of this adversary proceeding, the Sherwood Municipal Court took no action in this bankruptcy case. Indeed, neither the clerk of the municipal court nor the municipality filed a proof of claim for the restitution debt .[1]

■ The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(A), (E). Moreover, there is no issue of sovereign immunity in this case because Eleventh Amendment immunity does not extend to independent political subdivisions such as counties and cities. *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890); *Hadley v. North Arkansas Community Technical College,* 76 F.3d 1437, 1438 (8th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997).

### I.

### *Factual Background*

On July 22, 1997, the debtor Michelle Walters was involved in a car accident. When the police arrived and checked her license through their computers, it was discovered that there was an outstanding warrant for her arrest related to the nonpayment of the restitution debt. The Little Rock Police Department delivered her to a Sherwood police detective who advised her that she was not allowed to place her court fees in bankruptcy.[2] When she was brought to the incarcera-

---

1. Since the municipality failed to file a proof of claim, the Chapter 13 trustee is unable to make any payments to that entity on the debt, despite the fact that it was provided for in the plan. After confirmation of a plan, distribution under the plan is made to creditors whose claims have been "allowed." Fed.R.Bankr.P. 3021. A claim is allowed when it is filed. *See* 11 U.S.C. § 502. Until such time as a creditor files a proof of claim, the debt is not an allowed claim. Thus, any failure of the municipality to receive any distribution from the trustee is due solely to its own failure to avail itself of the provisions of the Bankruptcy Code by filing a proof of claim. Until a proof of claim is filed, and thereby allowed, the municipality may not collect the debt, either through the bankruptcy or from the debtor di-

rectly. It must wait until the conclusion of the bankruptcy case to enforce collection of the debt. *The fact that the debt is nondischargeable does not alter this result.* While the debtor or trustee *may* file a proof of claim on behalf of any creditor, 11 U.S.C. § 501(c); Fed.R.Bankr.P. 3004, they are not *required* to do so.

2. Although her testimony in this regard was somewhat unclear, it appears that the detective gave her this advice before she made any statement that her restitution debt was scheduled in her bankruptcy case. That is, it appears that the detective was aware that she had filed for bankruptcy and that the particular restitution debt for which there was an outstanding warrant had

tion facilities, the booking officer also told her, in harsher terms, that she was "not allowed" to place the debt in bankruptcy. While at the station, the detective reviewed the file within her sight. The bankruptcy clerk's notice of the bankruptcy case was in view in the file.

Upon being notified of his wife's arrest, Christopher Walters hired a ride from a friend[3] and proceeded to the municipal clerk's office to attempt to rectify the situation. He not only needed release of his wife, he urgently needed to retrieve the family's sole vehicle in order to rescue their children, now marooned at day care. The clerk permitted him to view the file, in which the notice of the bankruptcy was in plain view. The clerk's office advised Mr. Walters that it was the "court's choice" whether to "take the bankruptcy" or whether to issue a warrant.[4]

The debtors, being without funds, were compelled to borrow $600 from Mrs. Walters' mother, with interest, in order for Michelle Walter to be released from jail.[5] Since all of the debtor's disposable income is being paid into the plan,[6] this loan has not been paid and interest continues to accrue. The Municipal Court required the debtors to pay $589.84 for Mrs. Walters to be released. On September 23, 1997, the debtors filed this adversary proceeding, seeking return of the $589.84 and other damages.

On December 4, 1997, the parties appeared at a status conference in this proceeding, attorneys appearing on behalf of the plaintiff and both defendants. At that time the parties indicated that they would stipulate to the facts and submit the matter to the Court for determination. No stipulation being filed, the Court held a second status conference on January 29, 1998, at which time the parties indicated that they could not agree to any facts. Accordingly, the Court issued an order scheduling trial for March 24, 1998.

On February 17, 1998, the parties submitted a document entitled "Stipulations" which not only failed to declaratively state the facts with particularity, but also failed to frame the issues for the Court. For example, the parties did not even state with certainty the date on which the bankruptcy case was filed, November 9, 1995. The Court was not required to proceed further in that regard, however, it did because a review of the file revealed that the defendants failed to comply with one of the most fundamental and important rules of procedure. Despite having full knowledge of this case since October 1, 1997, and the attorney for the defendants appearing personally before the court on more than one occasion, the defendants failed to answer or otherwise respond to the complaint.

■■■ The Federal Rules of Bankruptcy Procedure provide:

> If a complaint is duly served, the defendant *shall serve an answer* within 30 days after the issuance of the summons, except when a different time is prescribed by the court.[7]

---

been scheduled in her bankruptcy, even before she made any statement regarding being in bankruptcy. The Court concludes that the municipality and its governmental units were cognizant that Michelle Walters was in bankruptcy and that this prepetition restitution debt was included in that bankruptcy case.

3. Mrs. Walters was driving the family car when the automobile accident occurred.

4. These statements are inexplicable in light of this Court's opinion *In re Veasley*, 204 B.R. 24 (Bankr.E.D.Ark.1996), entered six months prior to the incident with this debtor. In *Veasley*, this Court expressly advised the culpable party, once again, the Sherwood Municipal Court, that it was the province of the *bankruptcy court* to determine what treatment could be afforded a particular debt in a chapter 13 plan. *Veasley* expressly indicates that the municipality did not have the authority to order the debtor to pay fines directly

to the municipal court as opposed to providing for payment of the debt through the plan.

5. No one having $600 in cash available, the mother was compelled to obtain a cash advance on a credit card, incurring a finance charge as well.

6. Of course, the payments to the trustee include monies that are intended to be paid to the Sherwood Municipal Court. Since, however, the municipality has failed to file a proof of claim, they have not received a distribution under the plan.

7. The Court has never prescribed a different time nor ever indicated that an Answer was somehow not required. Indeed, the Court's recollection is that, during the initial conference, defendants' counsel was specifically advised that an answer needed to be filed.

Fed.R.Bankr.P. 7012(a) (emphasis added). The rules further provide for the procedure upon the failure to respond:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend *as provided by these rules* and that fact is made to appear by affidavit or otherwise, the clerk *shall enter* the party's default.

Fed.R.Bankr.P. 7055(a) (emphasis added). Neither appearances in court nor signatures on a simple stipulation of facts constitutes an answer or other response within the Federal Rules of Bankruptcy Procedure. The fact that counsel has appeared in this case renders the failure to answer particularly egregious.[8] Inasmuch as the defendant Sherwood Municipal Court failed to answer, default was entered against it.[9] The plaintiff was directed to appear for trial, still set for March 24, 1998, to produce evidence of her damages.

## II.

### *The Automatic Stay*

■ Section 362(a) of the Bankruptcy Code provides that upon filing of a petition in bankruptcy, a stay is imposed upon

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against

---

8. Indeed, the Court finds it incredible that counsel failed to raise the appropriate defenses, file a motion to dismiss, or motion for summary judgment. For example, the plaintiff not only named a judicial officer as a party defendant, but the allegations of the complaint make it clear that the doctrine of judicial immunity is applicable. The failure to file a motion to dismiss the individual judicial officer is untenable and a clear violation of counsel's ethical obligations. *See* Ark. Rules of Prof. Conduct 1.1, 1.3.

9. The defendant, the Honorable Milas Hale, III was sued in his capacity as judge of the Sherwood Municipal Court and his actions being within the bounds of his office, such that the doctrine of judicial immunity applied. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d

---

the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ***
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. ***

11 U.S.C. § 362(a)(1), (2), (3), (6). These provisions are to be broadly construed. *Delpit v. Comm'r*, 18 F.3d 768, 771 (9th Cir. 1994) ("Accordingly, section 362 is '*extremely broad in scope*' and 'should apply to *almost any type* of formal or informal action against the debtor or the property of the estate.' " (Emphasis in original) (quoting *Collier on Bankruptcy* )).

### A. *Notice to Creditors*

■ Upon the filing of a bankruptcy case, the clerk of the bankruptcy court serves a notice of the filing of the bankruptcy case upon all creditors listed on the debtor's schedules.[10] Fed.R.Bankr.P.2002(f), (*o*). In this manner, the creditors are advised of the bankruptcy filing and the imposition of the automatic stay. While it is true that there is a gap between the time of the filing and the time a creditor receives written notice of the bankruptcy case, the effect of the automatic stay is not limited. The stay exists regard-

---

555 (1988); *Briscoe v. La Hue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Mullen v. Galati*, 843 F.2d 293 (8th Cir.1988); *Coates v. Peachtree Apartments (In re Coates)*, 108 B.R. 823 (Bankr.M.D.Ga.1989). Accordingly, the Honorable Milas Hale, III was dismissed as a party defendant by Order entered on February 24, 1998.

10. In a voluntary case, the debtor is required to file a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities. Fed.R.Bankr.P. 1007(a)(1). Since the clerk and other parties in interest rely upon the debtor's list, the importance of the debtor's duty to accurately and thoroughly complete the schedules cannot be overemphasized.

less of whether a person or entity even has notice of the bankruptcy proceeding because the stay exists from the moment of filing and is enforceable until such time as the stay is lifted. Any person or entity who takes action to collect a debt after the filing of a bankruptcy case violates the stay such that the action taken is invalid, or, under some authority, void. *See generally Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 909, 910 (6th Cir.1993) (defining and distinguishing "void," "voidable," and "invalid" as applied to violations of the automatic stay). The lack of notice of the bankruptcy simply means that the stay violation is not likely wilful. *See* 11 U.S.C. § 362(h).

## B. *The Affirmative Duty to Halt Collection*

 Section 362(a) not only imposes a stay of proceedings against the debtor, it creates an affirmative duty on a creditor to cease actions which may violate the stay. Indeed, a creditor is required to act affirmatively to *reverse* actions which, if carried out, would violate the automatic stay. If, for example, a wage order or garnishment is in place prepetition, the creditor is under an affirmative duty to refuse the funds as well as reverse, suspend or halt the garnishment. *In re Roberts,* 175 B.R. 339 (9th Cir. BAP 1994) (state tax agency which received three post-petition payments from the debtor's employer pursuant to a pre-petition garnishment had an affirmative duty to stop the garnishment when notified of the automatic stay. Failure to do so was a willful violation of the stay meriting sanctions). The stay requires the creditor to maintain the status quo and to *remedy* acts taken in ignorance of the stay. The creditor may not accept payments with respect to its garnishment of the employer, but rather, has an affirmative duty to stop garnishment proceedings when notified of the automatic stay. Inadvertence, even through "computer activity" does not negate either the fact of a violation or wilfulness if there is knowledge of the bankruptcy case. *In re Taylor,* 190 B.R. 459 (Bankr. S.D.Fla.1995).

 A willful violation of the stay does not require a specific intent to violate the stay. Rather, the Bankruptcy Code provided for damages upon a finding that the defendant knew of the stay and the defendant's actions were intentional. The term "inadvertent" is used to mean acts taken without knowledge of the stay. *Id.; accord In re Atkins,* 176 B.R. 998 (Bankr.D.Minn.1994) (creditor had affirmative duty to ensure that bench warrant was withdrawn); *In re Koch,* 197 B.R. 654 (Bankr.W.D.Wis.1996) (creditor violated stay by accepting $71.41 garnished wages, even though the creditor's interest attached prior to the petition, because the debtor retained an interest at the time of filing. The retention was not inadvertent because the creditor knew the stay had been imposed); *In re Taylor,* 190 B.R. 459 (Bankr. S.D.Fla.1995) (although entry of default judgment was a non-wilful, technical violation of the stay, it became wilful and sanctionable upon attorney's failure to seek to vacate the default).

 Being advised of the filing of a bankruptcy case *in any form* places a creditor on notice of the bankruptcy filing. Upon being advised, even informally by telephone, of the bankruptcy case, the creditor is on notice of the bankruptcy. The creditor has an affirmative duty to ascertain the correctness of the information or advice; it may not disregard information of the bankruptcy case. Thus, if a debtor appears at a foreclosure sale and advises the foreclosing mortgagee that he has filed bankruptcy, the mortgagee has an obligation to, at a minimum, determine whether a bankruptcy has been filed, and if so, halt the sale. *Similarly, if, upon being arrested on a warrant for failure to pay a fine or restitution, a debtor advises the court of a bankruptcy case, the clerk cannot require the debtor to pay the restitution to be released from incarceration. See In re Barboza,* 211 B.R. 450, 452–53 (Bankr. D.R.I.1997). Even the court, as a creditor, has an obligation to verify the bankruptcy filing and release the debtor if the sole purpose of the arrest was to collect a prepetition debt.[11]

---

**11.** If the governmental entity has other purposes in arresting or otherwise detaining a debtor, it

may be entitled to proceed. *See generally Barboza,* 211 B.R. at 452. Moreover, if a debtor files a

■ Thus, *with regard to an obligation to pay a fine or restitution imposed prepetition,* when the Sherwood Municipal Court received notice of the bankruptcy case, the obligations imposed by section 362 of the Bankruptcy Code required it to:

- ensure that there were no warrants outstanding on the debtor;
- cancel any such warrants;
- ensure that no such warrants, pertaining to pre-bankruptcy actions with regard to which restitution has been ordered, are re-issued during the pendency of the bankruptcy case;
- upon the arrest of the debtor for failure to pay the prepetition debt, and given notice, actual or record, of the bankruptcy case, ensure the debtor's immediate release without condition of any monetary payment at that time.

Absent an order lifting the stay, this obligation continues throughout the pendency of the bankruptcy case with regard to those prepetition restitution debts.

■ Judicial officers, judicial staff, officers of the court, and police officers are under the same obligations. Moreover, a court may not prohibit or otherwise preclude a debtor from paying the restitution through the plan. *In re Veasley,* 204 B.R. 24 (Bankr. E.D.Ark.1996); *see Washington v. Hale (In re Washington),* 146 B.R. 807 (Bankr. E.D.Ark.1992). As this Court has previously noted:

> While the debtor and creditors may assert particular positions, negotiate for terms, and seek payment through the bankruptcy process, it is the province of the bankruptcy court to determine what terms or treatment *shall* be provided for in the Chapter 13 plan. No creditor or other court has the power or authority to direct the debtor to act in contravention of the law or make particular provisions in a plan of reorganization. If a creditor believes that the plan does not comply with the law or seeks to require additional terms, the remedy is to object to the plan and seek an Order from the Bankruptcy Court directing inclusion of particular terms.

*In re Veasley,* 204 B.R. 24, 25 (Bankr. E.D.Ark.1996). Since these concepts have not only been explained in similar proceedings before this court, but also have been the subject of an opinion by the Arkansas Attorney General, Ark.Op.Atty.Gen. No. 97–078, 1997 WL 321668 (May 13, 1997), the statements of the municipal officials are not only incorrect, they are inexplicable.[12] Indeed, future violations of this nature, in a similar factual situation, could be sanctionable. 11 U.S.C. § 362(h).

### C. *No Exception to the Automatic Stay Applies*

■ Section 362(b) enumerates the exceptions to the application of the automatic stay, which exceptions are narrowly construed by the courts. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 590 (9th Cir.1993). Efforts to collect a prepetition sentence of a fine or restitution are not excepted from the automatic stay. *Washington v. Hale (In re Washington),* 146 B.R. 807 (Bankr.E.D.Ark.1992). Section 362(b) sets forth a number of exceptions to

---

bankruptcy case in bad faith to circumvent the authority of a state court, cause may exist for relief from stay. *See generally State of Georgia v. Bell (In re Bell),* 215 B.R. 266, 275–76 (Bankr. N.D.Ga.1997). In this case, however, the two-year delay in her arrest, the statements of the clerks and officers, together with all of the other circumstances, clearly indicate that the municipality was pursuing a post-petition collection action with regard to this particular debtor, not vindicating the authority of the court.

12. It may be that the state clerks and other officers have incorrectly interpreted the Attorney General's opinion. The opinion correctly states bankruptcy propositions: a municipality may prosecute "hot check" violations even though the violator is a debtor in bankruptcy and that restitution debts are not dischargeable. From these statements, and in order to give them the benefit of the doubt, the clerks may have concluded that, since the debt is nondischargeable, they may take whatever action they deem appropriate to collect the pre-petition restitution debt. This conclusion is incorrect. Despite the instructions of this Court in *In re Veasley,* 204 B.R. 24 (Bankr. E.D.Ark.1996), and *Washington v. Hale (In re Washington),* 146 B.R. 807 (Bankr.E.D.Ark. 1992), and the apparent confusion arising in various municipalities, the Attorney General has apparently not been asked to opine on the *collectibility* of these nondischargeable debts during the pendency of a bankruptcy case.

the automatic stay, including the "commencement or continuation of a criminal action or proceeding against a debtor." 11 U.S.C. § 362(b)(1). In *Pennsylvania Department of Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588.[13] The United States Supreme Court stated:

> Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses. It is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and *at the same time to preclude probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13.*

*Id.* at 560–61, 110 S.Ct. at 2132 (emphasis added). Section 362(a) precludes enforcement of restitution orders while a debtor seeks relief under Chapter 13. Thus, a governmental entity is in violation of the automatic stay in bankruptcy if it acts upon the debtor's failure to pay the fines or restitution. *Hucke v. State of Oregon*, 128 B.R. 675 (D.Or.1991).

In *Davenport*, the Supreme Court realized that the application of section 362 of the Bankruptcy Code would "hamper the flexibility of state criminal judges in fashioning appropriate sentences and require state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests," and constituted an intrusion into the operation of the state courts. *Id.*, 495 U.S. at 564, 110 S.Ct. at 2133. However, concerns regarding judicial restraint "cannot justify rewriting the [Bankruptcy] Code to avoid federal intrusion." *Davenport*, 495 U.S. at 564, 110 S.Ct. at 2133. The state courts, like all creditors, must comply with the federal law established in title 11. *See* U.S. Const. Art. 6, § 2.

## D. *Nondischargeability and the Automatic Stay*

The Bankruptcy Code is clear that fines and restitution imposed in connection with a criminal judgment are nondischargeable, even in a Chapter 13 case. 11 U.S.C. § 1328(a)(3).[14] The nondischargeability of the debt, however, does not in any manner obviate the effect or the imposition of the automatic stay. Section 362(b), which provides for exceptions to the automatic stay, does not include a provision for permitting collection of nondischargeable debts. The nondischargeability of the debt means that the debtor remains liable for that debt, despite obtaining a discharge in bankruptcy. *See* 11 U.S.C. § 1328. The obligation to pay restitution, costs and fines is a debt recognized by the Bankruptcy Code, but any effort to collect, other than as permitted by the Bankruptcy Code, is a violation of the automatic stay, whether or not the debt is dischargeable. Thus, the fact that Michelle Walters' prepetition restitution debt to the Sherwood Municipal Court is nondischargeable does not permit the Sherwood Municipal Court to continue to maintain a warrant, or arrest Michelle Walters. Moreover, any statements by the City of Sherwood employees that she was "not allowed" to put her debt in bankruptcy, or that "the [municipal] court" could decide whether or not to "take" the bankruptcy were not only in error, they amounted to a wilful and egregious violation of the automatic stay such that sanctions would ordinarily be warranted.

## III.

### The Complaint for Turnover

Having determined that the Sherwood Municipal Court improperly coerced payment of the restitution debt in wilful violation of the automatic stay, the debtor is entitled to return of these funds, plus interest, and attorney's fees, according to law.

---

13. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) controls the determination of this issue. While the portion of that decision which holds restitution is dischargeable has been reversed by statute, 11 U.S.C. § 1328(a), the remainder of the opinion of the Court remains valid.

14. Although nondischargeable, they are not priority debts, *see* 11 U.S.C. § 507, and should not be listed as such. Whether the debtor may separately classify restitution debts under the plan is a different issue.

*See In re Barboza,* 211 B.R. 450 (Bankr. D.R.I.1997). The uncontroverted [15] evidence presented at the hearing was that the debtors incurred the following expenses due to the actions of the Sherwood Municipal Court: [16]

- $589.84 to the clerk in order for Michelle Walters to be released from jail;
- $12.00 finance charge on the loan;
- $95.22 interest on the $600.00 loan and finance charges;
- $180 the clerk of the Sherwood Municipal Court required the debtors to pay;
- $232.00 in lost wages for Michelle Walters attributable to her arrest and prosecution of this adversary proceeding;
- $84.00 in lost wages for Christopher Walters attributable to his wife's arrest and prosecution of this adversary proceeding;
- $5.00 Christopher Walters was obliged to pay in order to travel to the clerk's office in his efforts to obtain his wife's release from the improper incarceration;
- $46.50 in mileage costs attributable to the 150 miles driven by Christopher Walters in efforts to obtain his wife's release and in prosecuting this action; and
- $800 as a reasonable attorney's fee;

for a total of $2,044.56. Accordingly, judgment shall be entered in the debtors' favor on this amount.

**IT IS SO ORDERED.**

---

**15.** Inexplicably, but not surprisingly, given the prior inaction of the city attorney, *see supra* n. 6, no one appeared to represent the municipality on the issue of damages.

**16.** Punitive damages were not requested but would have been merited.