### In re Leslie WILSON.

**Bankruptcy Nos. 98–41554, 98–44203 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 20, 1999.

Charles Doerpinghaus, Benton, AR, for debtor.

David Jacobs, Mary Baker, Nick Turner, Joni Vollman, Houston, TX, Charles Coleman, Martin Thompson, Austin, TX, for defendant.

David D. Coop, N. Little Rock, AR, Chapter 13 Trustee.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court on its Order to Show Cause pursuant to Rule 9011, Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1307(c), why sanctions should not be imposed upon debtor's counsel and why the chapter 13 case should not be dismissed or converted. Hearing was held on March 24, 1999, at which all parties appeared.

*Procedural and Factual Background*

In 1995, the debtor admitted to swindling over $89,500 from her employer during the period October 1988 through April 30, 1991. Criminal prosecution began in September 1993, and on July 5, 1995, the debtor pleaded guilty to theft of $20,000. The debtor told the trial court that she and her husband were employed and had a combined family monthly income of $3,500. She also represented that their monthly expenses were $2,500 such that she had funds to pay the restitution. This was at a time when the debtor was in her second Chapter 13 case and supposedly dedicating all of her disposable income to a bankruptcy plan.[1] She also represented that she

---

1. Near the time of the initial prosecution the debtor and her husband were joint debtors in

had $5,000 currently on-hand to pay toward the restitution. Orders were entered reflecting the plea agreement and sentence under which she was to pay $5,000 by November 21, 1995, and thereafter, beginning on December 14, 1995, make payments of $730 per month. The debtor has never paid any of the restitution.

After she committed the criminal acts, but four years before she entered into the plea agreement, the debtor twice filed petitions for relief under chapter 13 of the Bankruptcy Code. Case Number 91–41544 was filed on June 27, 1991, in the Eastern District of Arkansas and voluntarily dismissed by the debtor less one month later. Accordingly, no discharge was granted in that case. The schedules filed in the first case did not list her employer or any Texas governmental units as creditors. The debtor's second chapter 13 case, Case Number 91–41786, was filed jointly with her husband in the Eastern District of Arkansas within a week after dismissal of her first case. Although the plan was modified at least six times,[2] and motions to add creditors were filed and

allowed, no governmental unit or any individual working in any Texas criminal court system was ever scheduled or listed with regard to this second bankruptcy case. No modifications were filed which addressed either the restitution or the insurance company.

In August 1996, because the debtor failed to pay any money toward her restitution, the Texas authorities filed a Motion to Adjudicate, seeking to have the criminal matters proceed. The debtor managed to escape any consequences until March 1998 when she was arrested. On March 13, 1998, she appeared before the Texas criminal court. She returned to Arkansas whereupon she filed her third bankruptcy case, on March 27, 1998. This time the debtor listed the Texas authorities on her schedules. The debt was listed as "disputed." The plan, confirmed on July 13, 1998, without objection,[3] provided that unsecured creditors would be paid *pro rata* from the plan payments, but made no explicit reference to any particular debt, merely stating that disputed debts would

---

an earlier bankruptcy case. Cumis Insurance Company moved for relief from stay in order to proceed against the debtor for the funds it was required to expend in payment of the embezzlement. The motion was withdrawn with Cumis to file a proof of claim in the bankruptcy case. A proof of claim in the inexplicable amount of $120.00 was filed and allowed. Nothing was paid on this claim.

2. The final "modification" filed in late 1996 was not a true modification of the plan pursuant to 11 U.S.C. § 1329, but, rather, sought immediate discharge. *Cf.* 11 U.S.C. § 1328(b).

3. While it is true that under *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252, 34 C.B.C.2d 1199 (1996), the Eleventh Amendment precludes a state sovereignty from being sued for damages in federal court, it does not obviate the effectiveness of federal law upon that entity. That is, although the debtor may not have the ability to sue a Texas governmental unit in this Court, federal law, including the Bankruptcy Code, 11 U.S.C., applies to those units. The Eleventh Amendment is not a talisman

providing state agencies with the authority or right to ignore federal law. The state and its agencies are bound by federal law, just as any other creditor. The state must respect and comply with the Bankruptcy Code, including, for example, provisions regarding the automatic stay, 11 U.S.C. § 362, the discharge injunction, 11 U.S.C. § 524, prohibitions against discriminatory treatment, 11 U.S.C. § 525, the binding effect of plan confirmation, 11 U.S.C. § 1327, and discharge, 11 U.S.C. § 1328. Thus, although a suit may not be maintained in the federal bankruptcy court against the state to enforce the Bankruptcy Code, the state is obligated to comply with the provisions of the Code. Accordingly, if the debt is "provided for" in the plan, and a discharge is entered, sections 1327 and 523 preclude later action to collect the debt. *See In re Daniel*, 107 B.R. 798 (Bankr.N.D.Ga. 1989); *In re Ungar*, 104 B.R. 517, 519 (Bankr. S.D.Ga.1989). Footnote number one to the pending motion to dismiss the adversary proceeding appears to indicate that the Texas defendants understand the import of the contents of the plan. The failure of the Texas authorities to object to confirmation is thus inexplicable.

not be paid.[4]

The Texas authorities continued with their efforts to enforce the terms of debtor's plea agreement, prompting the debtor's attorney to write letters to the district attorney and the state court judge. Despite the obvious conflict, the district attorney's office did not respond to the letters. On December 3, 1998, the debtor filed a Motion for Contempt against a Texas district attorney and the deputy district attorney as well as a separate adversary proceeding against the attorneys in their individual and representative capacities and against the state court judge. Motions to dismiss the motion for contempt and the adversary proceeding have been filed by the defendants. The Honorable John Hughes was dismissed as a party defendant by order entered in the adversary proceeding on February 24, 1999.

### The Order to Show Cause

On February 2, 1999, this Court held a status conference in the case, the adversary proceedings and the pending motions. 11 U.S.C. § 105(d). Attorneys representing the Texas defendants attended as did the debtor's attorney. The Court queried debtor's counsel on several matters, including whether notice had been provided to the Texas governmental units in the first two bankruptcy cases filed by the debtor. It appeared from counsel's responses as well as a review of the few documents that the second bankruptcy counsel had in his possession, that he failed to adequately investigate the grounds for the filing of the motion for contempt or adversary proceeding such that the Court believed that an Order to Show Cause regarding sanctions as well as dismissal of the case for cause also appeared appropriate.

### Rule 9011

 Rule 9011(c) provides for sanctions against persons violating the stric-

tures of Rule 9011(b). Rule 9011(b) provides that

> by presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purposes, such as to harass or to cause unnecessary delay or needles increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; \*\*\*\*

In addition, 28 U.S.C. § 1927 permits an award of attorney's fees and costs against an attorney or other person who multiplies proceedings unreasonably and vexatiously. *See generally In re Bryson,* 131 F.3d 601 (7th Cir.1997) (bankruptcy court has authority to issue sanctions pursuant to 28 U.S.C. § 1927); *In re Eatman,* 33 C.B.C.2d 989, 182 B.R. 386 (Bankr. S.D.N.Y.1995). An attorney's good faith belief that an argument has merit is insufficient to avoid Rule 9011 sanctions. The belief must be in accord with what a reasonable, competent attorney would believe under the circumstances. *In re Brown,* 28 C.B.C.2d 933, 152 B.R. 563 (Bankr. E.D.Ark.1993). An attorney may not simply accept, on faith, debtor's version of the facts. Rather, counsel has a duty to probe

---

**4.** The Court need not decide at this juncture whether there exists a debt for restitution or whether a debt for restitution was provided

for in the plan within the meaning of 11 U.S.C. § 1328.

426

the debtor for facts before they are included in any document presented to the court. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr.C.D.Cal.1991). The reasonableness of a position is determined in light of the existing situation and the known facts at the time the paper is signed, filed, or presented. *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir.1994).

The debtor has presented a number of documents to the court, including the debtor's petition and schedules, the plan of reorganization, the motion for contempt, and the complaint in the adversary proceeding seeking injunctive relief. A careful review of these documents does not reveal that a violation of Rule 9011(b) has, in the strict sense, occurred. The schedules list the disputed debt, the restitution obligation. The plan fails to specifically address the debt, but "provides for" disputed debts. The adversary proceeding is a suit for injunctive relief, requesting very narrowly that the defendants be prohibited from requiring that the restitution payments be made outside the plan. The allegations of the complaint are that

- the debtor filed a chapter 13 case, included the restitution debt on her schedules, and provided appropriate notice of the bankruptcy to the Texas authorities, including the defendants in the adversary proceeding
- the plan was confirmed without objection
- a hearing was scheduled in state court regarding the debtor's failure to pay restitution
- the Texas authorities seek to have the restitution paid outside the plan
- if the debtor is incarcerated she cannot make her chapter 13 plan payments.

Similarly, the motion for contempt alleges that the Texas authorities seek to collect restitution through the state court rather than through the bankruptcy court, *i.e.*, that they are attempting to compel the debtor make her restitution payments outside the plan. The complaint therefore seeks damages for violating the automatic stay of section 362(a). Counsel testified that he submitted these documents to the Court upon the good faith belief that the Texas authorities were trying to collect a debt without seeking relief from stay that not only may have been discharged in the debtor's second bankruptcy case but in any event had been provided for in the pending chapter 13 plan.

To further obfuscate the issues, there is a question as to the legal effect of the orders of the Texas state criminal court with regard to the dischargeability of the restitution debt. While the general statement that restitution is nondischargeable in bankruptcy is true, the application of the statute to these facts raises questions. The Bankruptcy Code provides that a chapter 13 discharge does not discharge debts "for restitution, or a criminal fine, *included in a sentence on the debtor's conviction of a crime.*" 11 U.S.C. § 1328(a)(3). In the instant case, counsel's research indicated that there was no adjudication of a crime. Rather, under the procedure in Texas, all adjudication and sentencing is deferred until such time as the debtor meets conditions of repayment of the restitution. Thus, there is no sentence or conviction. If there is a debt, but it is not imposed by a sentence on the conviction of the crime, it would appear that the Bankruptcy Code does not preclude its discharge.[5]

**5.** Although this issue makes dischargeability a murky question, the fact that there was no previous sentence or conviction clarifies the application of section 362(b) governing exceptions to the automatic stay. The request for an adjudication of guilt appears to fall expressly within the terms of section 362(b) which excepts commencement or continuation of a criminal action or proceeding against the debtor from the application of the automatic stay. The procedure also begs the question of whether a debt yet exists. If there is no conviction or sentence requiring restitution, and if, as it appears, the state court has the authority to impose that sentence in the future, inclusion in the plan of restitution which has not yet been ordered may be ineffective to discharge the "debt."

While it is true that each of the statements submitted to the court are not *per se* a violation of Rule 9011, there is an element of disingenuousness which raises concern. While the debtor properly asserts that the state authorities may not require the debtor to pay the restitution debt other than through the plan, the allegations neglect to state that the plan fails to provide for their payment and, indeed, provides that they will not be paid. Since the plan provides that disputed debts will not be paid, any restitution is disputed, it will not be paid. To state that the Texas authorities must "collect through the bankruptcy court," *i.e.*, through the plan, thus, results in no collection at all since the plan does not in fact provide for payment of the restitution debt.

Also troubling are the letters sent to the district attorneys and the state court judge.[6] The letter to McAnnulty states that the disputed restitution debt was "included in a previous bankruptcy where a discharge was entered." While the debtor may be correct in asserting that the Texas authorities were prohibited from taking actions to collect by virtue of the automatic stay, 11 U.S.C. § 362(a), it was not appropriate to imply that the debt was discharged when counsel had no evidence that the debt had ever been scheduled or the creditors noticed with the bankruptcy case. Indeed, counsel had a list of creditors and the Texas authorities were clearly *not* listed such that counsel should have been aware that, at a minimum, there was a defect in notice and possibly a substantial question as to whether the debt was discharged. The letter to the state court judge similarly implies that the disputed debt was discharged. Although one of the reasons for the letter is clear, to warn that a violations of the stay may be occurring,

the implication that the debt to the governmental units was discharged in a previous bankruptcy was faulty.[7]

Another troubling issue prompting the order to show cause is counsel's reliance upon this Court's opinion in *Walters v. Sherwood Municipal Court (In re Walters)*, 219 B.R. 520 (Bankr.E.D.Ark.1998), a copy of which debtor submitted to the Texas state court judge for the proposition that the Texas authorities could not force the debtor to make payments outside the plan. *Accord In re Veasley*, 204 B.R. 24 (Bankr.E.D.Ark.1996). While it is true that *Walters* address this issue, it also expressly establishes the impropriety of suing the state court judge. *Walters*, 219 B.R. 520, 525 n. 9. *Accord Cornelious v. Bishop (In re Cornelious)*, 214 B.R. 588 (Bankr.E.D.Ark.1997); *In re Williams (Williams v. Gruber)*, 196 B.R. 120 (Bankr. E.D.Ark.1996). Inasmuch as counsel knew of the impropriety of suing the state court judge, the Court believes that sanctions are appropriate with regard to naming him as a defendant in the adversary proceeding. The fact that suing the judge might "shore up" or otherwise add impetus to the prosecution of the complaint is not a good faith basis for naming a judge acting within an official capacity as a party defendant.

### Amount of Sanctions

In determining the appropriate sanction, the Court looks to the general tenets of Rule 9011, *i.e.*, sanctioning the individual responsible to punish current abuse, deter future abuse, remedy the damages caused by misconduct, and preserve as far as possible the rights of all parties. This Court has not only issued a number of opinions dismissing state court judges as party defendants, but has made its disapproval of such suits known in open

---

6. Since the letter to McAnnulty was appended to the motion for contempt it was arguably "presented to the court" within the meaning of Rule 9011(b).

7. Testimony, which was confusing at best, revealed that only Cumis Insurance Company

(the bonding company that paid the funds for the debtor's embezzlement) was the listed creditor in the debtor's second bankruptcy case. Cumis Insurance Company is not listed in this third case.

court and in opinions on other issues, including the *Sherwood* opinion relied upon by counsel. Accordingly, sanctions ordinarily would be merited to the extent that current abuse should be punished and others may be deterred from filing similar suits as well as to compensate the state entities for their time and expense. On the other hand, counsel has long appeared before this Court and has always acted properly and with due care for his clients [8] and the rules of this Court. The fact that he has found employment in the public sector in another area of the law militates against sanctions inasmuch as there is no future conduct to deter.

**ORDERED** that no further action on the Court's Order to Show Cause is appropriate.

**IT IS SO ORDERED.**

---

**8.** The Court disagrees, however, with his tactics in this case. To the extent the debtor believes that the debt was discharged in a prior proceeding, the appropriate manner to raise such issues is by reopening the case in which the discharge was granted and, if necessary, obtaining injunctive relief to halt collection actions. Filing a new case to raise dischargeability issues and disputing a debt within the plan context engenders confusion of issues and procedural chaos. This was particularly so here because the governmental entities are nowhere to be found in the earlier case. Rather, one must be clairvoyant to ascertain the connection between Cumis Insurance Company and the not yet mature restitution debt being sought by the state prosecutors. Upon reopening the previous case, these confusing issues could be sorted out by naming the insurance company. If, indeed, their indemnification action against the debtor has been abandoned and/or discharged, then they must be involved to insure the state does not seek restitution on its behalf.