**In re KNIGHT JEWELRY, Debtor.**

**Bankruptcy No. 94–40578–W–11–KMS.**

United States Bankruptcy Court,
W.D. Missouri.

May 24, 1994.

Steven Horak, Prairie Village, KS, for petitioner.

Gerald L. Thompson, Kansas City, MO, for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO TERMINATE AUTOMATIC STAY

KAREN M. SEE, Bankruptcy Judge.

Metro North Company filed a Motion for Relief from Automatic Stay to take possession of leased premises from debtor Knight Jewelry, Inc., and to dismiss or convert the case to Chapter 7. At the hearing on April 20, 1994, appearances were: Metro by counsel Steve Horak; debtor by corporate representative Shai Harmelech and counsel Gerald Thompson; and the U.S. Trustee by counsel Cynthia Edwards. At the end of the hearing, the court granted Metro's motions to terminate the stay and convert the case to Chapter 7, and ordered debtor to file schedules and statements of affairs. An order of conversion was entered April 20, and on April 28, debtor filed schedules, so those issues will be addressed only as they relate to the motion to terminate stay.[1]

---

1. After this opinion and order were entered, reciting that schedules were subsequently filed, it came to the court's attention that only partial schedules and statements of affairs, absent a signature, were filed.

## I. FACTS

Fairfax Distributors, Inc. leased retail space at Metro North Shopping Center from Metro North Company. Fairfax became Sterling Jewelers, Inc., which occupied the premises until October, 1992. Sterling assigned the lease to Sam Ventures, Inc. on October 25 or 28, 1992. Metro agreed to the assignment to Sam Ventures.

On November 2, 1992, Sam Ventures assigned the lease to Knight Jewelry, Inc., without consideration and without notice to or written consent of Metro, as was required by the lease. The only notice of change was a Knight Jewelry sign on the retail space. Mr. Harmelech, a shareholder of Sam Ventures, was also Knight's sole incorporator and corporate secretary.

On November 20, 1992, three and one-half weeks after the assignment to Knight Jewelry, Sam Ventures filed a Chapter 11 case in New Jersey. Sam Ventures did not list the Metro lease or disclose the assignment in its schedules or statement of affairs. Before the first assignment by Sterling to Sam Ventures, Sterling had paid its lease payments to Metro. Since October, 1992, Sam Ventures and Knight Jewelry have occupied the premises without any lease payments whatsoever to Metro or Sterling.

On the morning of January 10, 1994, Metro and Sterling obtained judgments in Associate Circuit Court in Clay County, Missouri granting them possession of the premises. That afternoon, Knight Jewelry, Inc., by Mr. Harmelech and without an attorney of record, filed a Chapter 7 petition in New York, even though its office and place of business was in Missouri. Knight continued doing business in Metro North Shopping Center despite the Chapter 7 filing, but it never filed schedules or attended the § 341 meeting. The New York bankruptcy court granted Metro's motion to dismiss the case for lack of jurisdiction.

On March 8, 1994, after Metro attempted to evict Knight Jewelry, Knight filed this Chapter 11 case. After the filing, Knight

failed to file schedules and statements of affairs, and to submit other documents requested by the U.S. Trustee, so the U.S. Trustee has been unable to conduct a § 341 meeting. Knight allegedly does not own any inventory, but sells jewelry on consignment. Mr. Harmelech has received a salary since the bankruptcy petition was filed, even though debtor has not filed an application to compensate him as an officer or to employ him.

Metro contends that aside from the termination by the judgment on January 10, 1994, the lease term would have ended on April 30, 1994. Knight contends the lease term would end in August, 1994. Knight did not exercise an option to extend provided in the written lease. The court finds that even if the lease had not been terminated by the January 10 judgment, Knight did not timely exercise the option and cannot now exercise it because the deadline passed long before this bankruptcy case was filed.

Mr. Harmelech testified that Knight's Chapter 11 plan would propose to pay Metro a total of 90% of the lease arrearage over a period of years and to continue in business at Metro North Shopping Center. He testified that an unrelated company named Scrimshaw could collateralize Knight by pledging Scrimshaw's assets so Knight could continue in business. However, Mr. Harmelech stated that he had not even discussed this proposal with Scrimshaw. He also provided no evidence of ability to generate funds to pay the 90% amount to Metro. Debtor's own calculation would end the lease by its own terms in August, 1994, within four months after the hearing date. Debtor did not offer any explanation of how it could retain the premises for a Chapter 11 plan after August, 1994.

The U.S. Trustee had continued the § 341 meeting because Knight had not filed schedules. As of the hearing date, the meeting had not been conducted and debtor still had not filed schedules or statements of affairs, even though Mr. Harmelech said they would not be hard to complete and he had no good excuse as to why they had not been filed. The U.S. Trustee also requested the following documents, which as of the hearing debt-

or had not provided: 1) a corporate resolution authorizing the bankruptcy filing; 2) bank statements; 3) proof of insurance, including workmen's compensation insurance; 4) a voided debtor in possession check, to show a DIP account had been opened; 5) tax returns; 6) debtor's information sheet; 7) a certificate of corporate good standing from the State of Missouri; 8) a copy of the Metro North Shopping Center lease; 9) an application to employ counsel; and 10) an application to compensate officers. At the hearing, the U.S. Trustee represented that if Metro had not filed motions, the U.S. Trustee would have filed a motion to dismiss or convert. At the end of the hearing on April 20, 1994, the court converted the case to Chapter 7 and ordered debtor to file schedules.

## II. LEGAL DISCUSSION

Metro North Company seeks relief from the stay so it can take possession of the leased premises occupied by Knight Jewelry. A creditor may be granted relief from the automatic stay (1) for cause, which includes the lack of adequate protection of the creditor's interest, or (2) if the debtor does not have any equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). For the following numerous reasons, Metro's motion to terminate stay should be granted.

### A. Relief for Cause Under § 362(d)(1): Lease Termination

■ Metro contends the lease was terminated before debtor filed bankruptcy by entry of the state court judgments. The court agrees. Since the lease was terminated before the bankruptcy case was filed, cause exists to grant relief from the automatic stay. *In re Masterworks, Inc.*, 94 B.R. 262, 268[7] (Bankr.D.Conn.1988).

■ The Clay County judgments were entered the morning of January 10, 1994. Knight's New York bankruptcy petition was not filed until the afternoon of the same day. Therefore, there was no assumable lease when Knight filed its New York Chapter 7 case on January 10, 1994 or when Knight filed its second bankruptcy petition, under

Chapter 11, in this court on March 8, 1994. Consequently, Metro's motion for relief from stay for cause under § 362(d)(1) will be granted. Even if there was an assumable lease at the time Knight filed its petition, this court would modify the stay to permit litigation over the lease to continue in the state court, the appropriate forum since the litigation was already well under way there before this bankruptcy case was filed.

■ Furthermore, even assuming an effective lease on March 8, 1994 when this bankruptcy case was filed, it expired on April 30, 1994 by Metro's calculations, or giving debtor the benefit of the doubt by using debtor's calculation of the lease period, it will expire by its own terms in the immediate future, in August, 1994. The court finds Knight did not meet notice or other contractual requirements which were necessary to trigger the option. Therefore, even if there was any evidence that debtor could reorganize, which there is not, there would be nothing to reorganize after August, 1994. The court finds the lease was terminated by the state court judgment, entered January 10, 1994, before this bankruptcy proceeding was filed on March 8, 1994, and therefore, the automatic stay should be terminated.

### B. Relief for Cause Under § 362(d)(1): Bad Faith Filing

■ A bad faith filing may constitute cause for relief from the automatic stay, *In re Novak*, 103 B.R. 403, 413[4] (Bankr. E.D.N.Y.1989). Metro's pleadings included allegations of bad faith, but in the absence of such pleading the court could have raised the issue. *In re Little Creek Development Co.*, 779 F.2d 1068, 1071[1] (5th Cir.1986). Where a debtor seeks protection of the Bankruptcy Code, creditors may legitimately expect the debtor, at a minimum, to abide by provisions of the Code. When debtors flout the code, they lose their protection from creditors and relief from the automatic stay will be granted. *Farmers & Merchants Bank & Trust v. Trail West, Inc.*, 28 B.R. 389, 394[9] (D.S.D. 1983).

■ The court may examine the three repeat filings by this debtor and a related entity to determine good faith. *In re Hund-ley*, 103 B.R. 768, 770[1] (Bankr.E.D.Va. 1989). Knight was formed for the purpose of Knight and Sam Ventures to use the Bankruptcy Code's protection to avoid payment of rent and eviction, and not for any serious reorganization effort. In fact, Knight's New York case was a Chapter 7, illustrating a lack of intent to reorganize.

Knight Jewelry and Sam Ventures, which share Mr. Harmelech as shareholder, officer, and incorporator, have filed three bankruptcy petitions in New Jersey, New York and Missouri, first in connection with a concealed transfer of the lease, and then at two critical moments to impede action on the lease. The multiple filings by companies with interrelated principals raises suspicions. The undisclosed assignment of the lease by Sam Ventures to a related company three weeks before it filed bankruptcy appears to be a fraudulent transfer intended to hinder creditor Metro. At a minimum, Sam Ventures should have disclosed the assignment in its schedules and statements of affairs. The court concludes that in all three cases, there was no intent to reorganize, but merely to delay creditors in attempts to gain possession of the premises.

Knight has failed to file schedules, statements of affairs, applications to employ counsel or compensate officer, or other required documents in both bankruptcy cases, and has failed to present any good cause for these failures. The U.S. Trustee has been unable to conduct the required § 341 meeting in either case and it is impossible for creditors, the U.S. Trustee or the court to monitor debtor's operations.

This case is in essence a single creditor case, with Metro as the creditor, so any reorganization is really for the benefit of debtor and its principals and not for the benefit of creditors. Furthermore, debtor provided no evidence of any remote ability to propose a confirmable plan. Under these circumstances, it would simply be wrong to require the creditor to suffer the delay of a futile Chapter 11 proceeding and to foot the bill for debtor to continue to occupy premises on which rent is not being paid and has not been paid since 1992. Knight's filing is part

of a series of bad faith delay tactics. Debtor's bad faith in filing this Chapter 11 case constitutes cause under § 362(d)(1) to grant Metro's motion for relief from the stay.

### C. Relief for Cause Under § 362(d)(1): No Adequate Protection

A debtor who seeks to use property in which another entity has an interest may have to provide adequate protection. Debtor's inability to provide adequate protection to the creditor is cause for relief from the automatic stay. § 362(d)(1). Even if the lease had not terminated before debtor filed a petition, the court may grant relief from the stay because the landlord lacks adequate protection. *In re De Santis,* 66 B.R. 998 (Bankr.E.D.Pa.1986); *In re Richards Pontiac, Inc.,* 6 B.R. 773, 777[6] (Bankr.E.D.N.Y. 1980).

From October, 1992 to the present, neither debtor Knight nor predecessor Sam Ventures has paid a cent in rent to Metro. Even if a lease existed on the date Knight filed its petition and this case was not converted to chapter 7, Knight has not given any adequate assurance that it can or will cure the defaults under the lease and perform it obligations in the future. Mr. Harmelech's testimony that an unknown company named Scrimshaw may pledge assets to secure debtor's obligations, but that he has never asked Scrimshaw about its willingness to do so, does not constitute adequate assurance.

### D. Relief Under § 362(d)(2)

Under § 362(d)(2) the stay must be lifted if debtor has no equity in the property and the property is not necessary for an effective reorganization. Part one is satisfied because the lease terminated before the bankruptcy filing, so the lease is not property of the estate in which debtor could have any equity.

Although debtor's lack of any interest in the lease concludes the question, the court will address the second part, which is that debtor had the burden to show the property was necessary for an effective reorganization. That burden would include some evidence that it is, in fact, possible to propose a confirmable plan. The only potential plan outlined was that Mr. Harmelech wanted to pay Metro a total of 90% of its lease arrearage over a period of years. He did not indicate how or when funds to pay the 90% figure would be generated so there was no proof of feasibility.

In addition, even if one assumed the lease had not terminated before the bankruptcy filing, such a plan is not confirmable because it does not comply with § 365(b)(1). In order to assume the lease under § 365(b)(1) so that a plan could be filed, debtor must be able to (1) cure or provide adequate assurance of ability to cure the default promptly, i.e. pay 100% of the arrearage; (2) provide adequate assurance of future performance; and (3) compensate the other party to the lease for any pecuniary loss to such party resulting from such default. The plan did not propose to pay even 100% of the arrearage and future payments, much less any pecuniary loss suffered by Metro or Sterling as a result of the default. Thus, on its face, the skeletal plan outlined by Mr. Harmelech is not confirmable over Metro's objection.

Finally, since the case was converted to Chapter 7 at the end of the hearing, the property is not necessary for a reorganization.

### III. CONCLUSION

Knight's lease with Metro terminated prior to filing of the Chapter 11 petition. Knight's bankruptcy filing was in bad faith. Knight failed to provide adequate protection to Metro. Knight has no interest or equity in the property and debtor failed to show the property was necessary for an effective reorganization or that any feasible, confirmable plan could be proposed. Finally, no plan will be proposed because the case has been converted to Chapter 7.

For the foregoing reasons, it is **ORDERED** that Metro North Company's Motion to Terminate Automatic Stay is granted, and Metro may enforce its judgment by taking possession of the premises pursuant to the judgment entered January 10, 1994 by

the Associate Circuit Court of Clay County, Missouri.