**In re Heidi WESTMAN, Debtor.**

**Heidi Westman, Plaintiff,**

**v.**

**Bruce Andersohn, Anoka County Sheriff, and Anoka County, Defendants.**

**Bankruptcy No. 02–83429.
Adversary No. 03–4055.**

United States Bankruptcy Court, D. Minnesota.

Oct. 24, 2003.

Barbara J. May, Arden Hills, MN, for plaintiff.

Robert D. Goodell, Assistant Anoka County Attorney, Anoka, MN, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

This matter came before the court for trial on August 5, 2003, continuing on September 9, 2003, with final briefs due on September 19, 2003. All appearances were noted on the record. Based on all of the pleadings, exhibits, and testimony adduced at trial, the court now makes the following:

### FINDINGS OF FACT

On October 1, 2001, Deputy Bruce Atkins of the Anoka County Sheriff's Department ("Sheriff") seized a 1994 Pontiac Bonneville ("the vehicle") belonging to Plaintiff Heidi Westman ("Westman") pursuant to a Writ of Execution issued by the Washington County District Court on July 30, 2002. The Writ of Execution had been secured by Janet Morin ("creditor"), who obtained a judgment in the amount of $6,420.52 against Westman from the Washington County District Court on February 28, 2001.

At the time of the vehicle's seizure, Deputy Atkins called Blue Tow Service, Inc., ("Blue Tow") and Blue Tow towed the vehicle to its impound lot.[1] Although Blue Tow rarely provides towing services for the Sheriff, in this instance the Sheriff scheduled an execution sale for October 15,

---

1. Blue Tow is a Minnesota Corporation and not owned or operated by Anoka County.

2002, at 10:00 a.m. to be held at the Blue Tow impound lot. As a result of the tow, Westman incurred a towing fee of $65.00, a $20.00 administrative fee, and began to accrue storage fees of $24.23 a day including tax.

On October 10, 2002, Westman filed a case under chapter 7 of Title 11 of the United States Bankruptcy Code. Her Schedule C, claim of exemption, listed the vehicle as exempt and valued it at $1,200.00.[2] On October 14, 2002, Westman or her attorney informed Sgt. Ron Bouley[3] ("Sgt. Bouley") of the Sheriff's Office of the bankruptcy filing. Consequently, Sgt. Bouley informed Westman that he canceled the execution sale that was to be held the following day. Although he was unfamiliar with the term "automatic stay," Sgt. Bouley understood that he could not proceed with the sale because of the court order entered upon Westman filing for bankruptcy. Sgt. Bouley also informed the creditor who sought the writ of execution that the sale had been cancelled. The creditor, however, is not a defendant in this case, did not testify regarding any action she took concerning the vehicle, and Westman offered no testimony regarding any post-petition contact between Westman and the creditor. In fact, Westman admits that neither she nor her counsel demanded that the creditor provide the Sheriff with a release.

Although the testimony of the parties varied as to some of the specifics of the communications between them, the essential facts are undisputed. The Sheriff's Office, and Sgt. Bouley in particular, in communications to Westman or her counsel throughout the bankruptcy case, required Westman to provide authorization from either the bankruptcy court or the chapter 7 Trustee prior to allowing the release of the vehicle to Westman. Sgt. Bouley, and later the County Attorney's Office, also informed Westman that she must pay Blue Tow its towing charges and storage fees before the vehicle would be released to Westman. Unfortunately, the parties interpreted this exchange of information differently.

Westman construed the communication from Sgt. Bouley as requiring two actions by Westman. First, the payment of Blue Tow's charges prior to the Sheriff authorizing the release of the vehicle and, second, an order from the bankruptcy court or authorization from the chapter 7 Trustee. Westman considered these requirements as establishing that the Sheriff, and consequently Anoka County, was exercising control over property of the estate. The Sheriff and the Anoka County Attorney construed this same communication not as an exercise of control over property, but as providing information to Westman advising her of what would be required for her to obtain the vehicle from Blue Tow. Sgt. Bouley testified that he understood that the Sheriff had no authority to demand the release of the vehicle from Blue Tow, could not defeat Blue Tow's lien under Minnesota law, and that the Sheriff required authorization from either the courts or the Trustee for authority to release the vehicle to Westman and had no independent authority to release the vehicle.

2. A meeting of creditors was scheduled for November 15, 2002, and the court set a deadline of 30 days after the conclusion of the meeting of creditors for objections to any claimed exemptions. In this case, the Trustee concluded the meeting of creditors on November 15 and no party in interest objected to Westman's exemption of the vehicle. Therefore, the vehicle ceased to become property of the estate on or about December 15, 2002.

3. Sgt. Bouley is now Lieutenant Bouley, but I will refer to him by his rank at the time the Sheriff seized the vehicle.

Throughout this ordeal, the Chapter 7 Trustee ("Trustee"), although requested to do so, rather rudely failed to communicate with the Sheriff or the County Attorney until December 23, 2002, when a paralegal employed by the Trustee informed the Sheriff that the Trustee did not seek turnover of the vehicle and would abandon the property. By that time, however, the Trustee had no asset to abandon, the deadline to objecting to Westman's exemption having passed.

On January 15, 2003, Westman received her discharge and the automatic stay expired. Westman does not allege any violation by the Sheriff or the County of the discharge injunction. The dispute between the parties continued, however, until the trial date when I, with the consent of the parties, authorized Blue Tow to dispose of the vehicle, including the option to return the vehicle to Westman after payment of an amount acceptable to Blue Tow in satisfaction of its lien.

## DISCUSSION

### I. THE PLAINTIFF'S BURDEN

■■■ Westman bears the burden of proof in an action for violation of the automatic by the preponderance of the evidence. *See, e.g. Clayton v. King (In re Clayton)*, 235 B.R. 801, 806–07 (Bankr. M.D.N.C.1998); *In re Dunn*, 202 B.R. 530 (Bankr.D.N.H.1996); *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126, 129 (Bankr.N.D.Ohio 1994)(*citing Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).[4] Defendant has the burden of proof of any

defenses that are raised, such as immunity or inapplicability of the automatic stay to the defendant's actions. *See In re Flack*, 239 B.R. 155, 163 (Bankr.S.D.Ohio 1999). To prevail on a claim for violation of the stay, Westman must establish that: (1) a violation occurred; (2) the violation was committed willfully, (3) the violation caused actual damages. *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir.1991); *Adams v. Hartconn Assocs., Inc. (In re Adams)*, 212 B.R. 703, 708 (Bankr.D.Mass. 1997). If Westman proves a violation of the stay, section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Although § 362(h) requires a "willful" violation as a condition precedent to recovering damages, this does not mean that an entity must intend to violate the stay. "It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Lansdale Family Restaurants Inc. v. Weis Food Service (Lansdale Family Restaurants Inc.)*, 977 F.2d 826, 829 (3rd Cir. 1992); *Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 776 (8th Cir.1989)("A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition.").

---

4. A minority of courts have held that the proper standard is one of clear and convincing evidence. *See, e.g., Bolen v. Mercedes Benz, Inc. (In re Bolen)*, 295 B.R. 803, 807 (Bankr.D.S.C.2002); *Diviney v. NationsBank of Texas (In re Diviney)*, 211 B.R. 951, 961 (Bankr.N.D.Okla.1997) *aff'd* 225 B.R. 762

(10th Cir. BAP 1998); *Brockington v. Citizens and S. Nat'l Bank of S.C. (In re Brockington)*, 129 B.R. 68, 70 (Bankr.D.S.C.1991). Having found that Westman failed to meet her burden under the less onerous burden of proof, the proper standard of proof is not an issue in this case.

Nevertheless, an award of punitive damages under section 362(h) requires not only a willful violation of the automatic stay, but also a finding of "appropriate circumstances." The Eighth Circuit interpreted this language to mean "egregious, intentional misconduct on the violator's part." *Knaus*, 889 F.2d at 776 (*citing United States v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir.1989)).

## II. THE PROPER COMPLAINT

In her complaint Westman alleged that the defendants violated section 362(a)(1). Section 362(a)(1) prohibits the "continuation, including issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). It quickly became evident, however, that neither Anoka County nor the Sheriff continued any action or proceeding against Westman, and Westman admitted as much in her testimony. Therefore, Westman failed to prove a claim under this section. On the other hand, from evidence adduced at trial it became clear that the real issue of the case was whether the defendants exercised control over property of the estate in violation of section 362(a)(3). Federal Rules of Civil Procedure Rule 15(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015, states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

FED. R. CIV. P. 15(b).

Defendants raised this issue at the commencement of the trial but did not request a continuance to meet the plaintiff's shift in theory so close to the date of trial. However, I received the evidence subject to later ruling on their motion. I find defendants have suffered no prejudice. The recessing of the trial for more than 30 days allowed the defendants any additional time necessary to prepare a defense, thereby reducing any prejudice in allowing Westman permission to amend. Westman requested permission to amend her complaint at trial and I will grant her request and consider the complaint as alleging a violation under 11 U.S.C. § 362(a)(3).

## III. THE EXERCISE OF CONTROL

Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Anoka County argues that it is not a creditor in the case and, therefore, the stay does not apply, but as Westman correctly argued section 362(a) applies "to all entities." 11 U.S.C. § 362(a). "Entity" includes a "governmental unit." 11 U.S.C. § 101(15). "Governmental unit" means, e.g., municipality, a State or other "domestic government." 11 U.S.C. § 101(27). Without a

doubt, the automatic stay applies to the Sheriff and Anoka County. The issue then is whether the County, either through the Sheriff or the County Attorney, exercised control of property of the estate in violation of the automatic stay.

■ Throughout Westman's bankruptcy case the communication between the parties has been, at best, imprecise. Westman made a demand for the return of her vehicle, the Sheriff refused. Westman's counsel construed this refusal as a violation of the automatic stay. The County Attorney's Office, whose advice the Sheriff sought, was uncertain of the law. When counsel for Westman confronted them with the problem, the Assistant County Attorney sought clarification on the law from Westman's counsel, but received no guidance. Instead, she threatened to and did sue. Westman's counsel continued to insist that Anoka County and the Sheriff figure the problem out for themselves and continued to demand return of the vehicle to Westman. Sgt. Bouley's understanding of his obligation, however, was simple: in civil matters, the Sheriff and those acting under his authority, acts in accordance with the orders of the court or, as occurs with a writ of execution, the commands of a creditor at whose direction the Sheriff acts pursuant to the writ.

In Westman's case, a writ of execution was issued at the request of the creditor. *See* MINN. STAT. ANN. § 550.04. The writ commands the sheriff "to satisfy said judgment, with interest and your fees, out of the personal property of the judgment debtor ...." The Sheriff was then required, by statute, to execute against any property of Westman. In this case, seizure of the vehicle. The statutes require that:

> The officer shall execute the writ against the property of the judgment debtor by levying upon the same, collecting the

things in action, or selling the same if the court so orders, selling the other property, except as provided in section 550.09, and paying to the judgment creditor the proceeds, or so much thereof as will satisfy the execution.

MINN. STAT. ANN. § 550.08

Prior to the sale of the property, the Sheriff may release the property "on the request of the judgment creditor." MINN. STAT. ANN. § 550.11. Although the sale was stayed, Westman requested no such release from the creditor at any time during the bankruptcy case and the creditor did not provide one.

Westman relies heavily on the *Knaus* case for the proposition that the defendants had an affirmative duty to turnover the property to Westman. As the court in *Knaus* stated:

> The duty to turn over the property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor. Rather, the duty arises upon the filing of the bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to "exercise control over the property of the estate" in violation of the automatic stay.

> \*    \*    \*    \*    \*    \*

The principle is simply this: that a person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings). Otherwise, if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debt-

or or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced. The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return. And those who unjustly retain possession of such property might do so with impunity.

*Knaus*, 889 F.2d at 775 (citations omitted).

The defendants do not disagree with the holding in *Knaus*, but correctly argue that *Knaus* would require turnover, not to Westman, but to the Trustee. *Id.* (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Perhaps Sgt. Bouley did not articulate his concern to Westman adequately, but he is correct that the Sheriff was not free to release the vehicle to Westman. It became apparent during the trial that the parties were using two definitions of the term "release." Westman used the term to mean a request to the Sheriff to free her vehicle from impound. The Sheriff, and later the County Attorney, used the term as contemplated under Chapter 550 of the Minnesota Statutes, a release of the Sheriff "from an obligation, duty, or demand." Bryan A. Garner, A Dictionary of Modern Legal Usage, 750 (2nd ed.1995).

The Sheriff was entitled to receive a release from the creditor, followed by instructions from the Trustee regarding turnover, and failing either an order from a court releasing him of his obligation under the writ of execution. Without this direction, the Sheriff faces several possibilities in these circumstances. For instance, a creditor could seek relief from the automatic stay for cause, including a bad faith filing or that the debt was in the nature of child support, alimony or maintenance, and request permission to continue with the sale. *See* 11 U.S.C. § 362(d)(1); *In re Knight Jewelry*, 168 B.R. 199, 202 (Bankr. W.D.Mo.1994); 11 U.S.C. § 362(b)(2)(B). Although neither circumstance was present in this case, it would be inappropriate to place the burden on the Sheriff to determine the intent of a creditor to seek or not seek relief from the bankruptcy court or to determine the nature of the debt when the burden is on the creditor, not the Sheriff, to prevent violations of the automatic stay. *See Rosengren v. GMAC Mortg. Corp.*, 2001 WL 1149478, *3 (D.Minn.2001)(*citing Mitchell Const. Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr.N.D.Ga. 1995)); *see also Knaus*, 889 F.2d at 774–775.

As one example, the sheriff in the *Atkins* case was placed into a similar situation as the Sheriff in this case. In *Atkins* a creditor brought a motion for an order adjudging a debtor in contempt for failing to comply with court ordered discovery. *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998, 1003 (Bankr.D.Minn.1994). Debtor failed to appear at the hearing on the contempt motion and an arrest warrant was issued. After issuance of the warrant the debtor filed for bankruptcy, but was later arrested on the warrant. The creditor's attorney sought the release of the debtor from custody by notifying the sheriff of the bankruptcy. The sheriff refused to do so without the creditor quashing the order for the debtor's arrest. *Id.* at 1004. While the debtor in *Atkins* did not name the sheriff as a defendant, I believe the finding of the court would be the same: the creditor "failed to stop a process of debt enforcement that [creditor] lawfully started before the Debtor filed for bankruptcy." *Id.* at 1008. The county that issued the warrant was not responsible for quashing the warrant, nor was the sheriff that executed the warrant, that responsibility was the creditor's. *Id.*

Moreover, the Sheriff in this case, as in any bankruptcy case, must be concerned about the interests of the bankruptcy trustee. Westman argues that bankruptcy trustees, in general, and this trustee (who seems to have rudely ignored requests for information), do not want to be bothered with property that is claimed exempt. Even if this conclusion were true, the Sheriff's concern is with his responsibility under the law. Section 542 requires:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

It is not the Sheriff who must make the determination whether the property has value to the estate. That determination must be made by the Trustee. Furthermore, the Sheriff may also be considered a custodian [5] of the property with knowledge of the commencement of the case and is required under section 543 to deliver "to the trustee," not to the debtor, any property.[6] 11 U.S.C. § 543(b)(1); *Skinner v. First Union Nat'l Bank (In re Skinner)*, 213 B.R. 335, 340 (Bankr.W.D.Tenn. 1997)(the court concluded that the Sheriff is a custodian for purposes of the Bankruptcy Code); *but see In re Taylor's of St. Petersburg, Inc.*, 110 B.R. 593 (Bankr. M.D.Fla.1990).

The defendants testified that several attempts were made to contact the Trustee for instruction and that the defendants continued to encourage, insist, or demand, depending upon the parties' perspective, that Westman obtain the assistance of the Trustee. The evidence is also clear that Westman did nothing to assist in the resolution of the situation except to continue to demand the return of the vehicle. But even if the Sheriff had wanted to deliver the vehicle to the Trustee's doorstep, the Sheriff could not have effectuated delivery of the vehicle without payment of Blue Tow's lien [7] that secured the towing fees, administrative fees, and storage cost of Blue Tow. The Sheriff was, however, under no obligation to pay these costs and fees on behalf of the debtor or the estate.

---

**5.** "custodian" means—

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

11 U.S.C. § 101(10).

**6.** Section 543(b)(1) sets forth the duty of a custodian to deliver property to the trustee:

(b) A custodian shall—
(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case.

11 U.S.C. § 543(b)(1).

**7.** The parties do not dispute that Blue Tow had a lien on the vehicle under Minnesota law from the moment it towed Westman's vehicle. Section 541.18 states that:

A person who tows and stores a motor vehicle at the request of a law enforcement officer shall have a lien on the motor vehicle for the value of the storage and towing and the right to retain possession of the motor vehicle until the lien is lawfully discharged. This section does not apply to tows authorized in section 169.041, subdivision 4, clause (1).

MINN. STAT. ANN. 514.18 Subd. 1a (2003).

■ In light of the facts and circumstances of this case, I find that neither the Sheriff, nor any other employee of Anoka County, willfully violated the automatic stay. "The policy of Section 362(h) to discourage willful violations of the automatic stay has long been tempered by a reasonableness standard born of courts' reluctance to foster a cottage industry built around satellite fee litigation." *Rosengren*, 2001 WL 1149478 * 5 (*citing In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y.1998)) (internal quotation omitted). I find it was Westman's conduct, as directed by her counsel, in this case that was unreasonable. Westman and her counsel continued to recite the maxim that the debtor should not be made to jump through hoops to obtain the return of a debtor's property. Westman and her counsel fail to understand the differences, however, between the rights of a debtor in chapter 7, the rights of a debtor-in-possession in chapter 11, and the rights of a debtor entitled to possession of all property of the estate in chapter 13. *See* 11 U.S.C. § 1107; 11 U.S.C. § 1306(b).

Westman appeared to view the Sheriff and Anoka County as deep pockets, especially after the Sheriff and the County Attorney failed to immediately "release the vehicle" to Westman and expressed a lack of knowledge regarding bankruptcy law and the *Knaus* case. Westman, or her counsel, must have quickly realized that the vehicle had no value considering the tow fees, the administrative fees, and the storage fees, that by the time the deadline for objecting to exemptions passed exceeded the value of the vehicle. Seeking a deep pocket is the only logical explanation for Westman's failure to communicate with the creditor and the uncooperative attitude of Westman's counsel. No demands were placed on the creditor to release the writ of execution, and no request was made to this court to intervene prior to the vehicle

becoming valueless to Westman except as an object of litigation.

Perhaps the Sheriff and the County Attorney were at fault for failing to properly articulate their reasoning for being unable to return the vehicle to Westman, but Sgt. Bouley understood his duty: execute the writ, sell the property or hold the property until he was released from this duty either by a release from the creditor, turnover to the Trustee or by order of the court. Under these circumstances, I find that the defendants did not exercise control over property of the estate since the Sheriff could only act at the direction of others, and not of his own accord, except to the extent that as a custodian the Sheriff attempted, although unsuccessfully, to turnover the property to the Trustee. Therefore, I find no willful violation of the automatic stay.

## IV. SOVEREIGN IMMUNITY

■ The defendants also raised the issue of sovereign immunity at the summary judgment stage of the proceeding. At that time I expressed the opinion that sovereign immunity may not apply to the Sheriff in this case and allowed the case to proceed to trial. Sovereign immunity may apply to the Sheriff if I found that the holding of the vehicle was in the context of the Sheriff's official state duties, but the Eleventh Amendment does not normally extend sovereign immunity to counties or their officials and similar municipal corporations when sheriffs and deputies are acting as county officials. *See, e.g. Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *In re Sumpter*, 171 B.R. 835 (Bankr.N.D.Ill.1994). The question here is whether the Sheriff was acting as an agent of the State, or merely acting as a county official which makes sovereign immunity inapplicable. *See Hufford v.*

**348**

*Rodgers,* 912 F.2d 1338, 1341 (11th Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). Since "a court may reserve judgment on Eleventh Amendment issues even when advanced by a state where it can resolve the case on other grounds and the prevailing party on the merits would be the same as the prevailing party if immunity were recognized," I will not decide the issue. *Bowers v. National Collegiate Athletic Ass'n,* 346 F.3d 402, 418, 2003 WL 21978571 *10 (3rd Cir.2003).

ACCORDINGLY, IT IS HEREBY ORDERED THAT judgment be entered in favor of the defendants, Bruce Andersohn, Anoka County Sheriff, and Anoka County, and against the plaintiff, Heidi Westman. The plaintiff's complaint is hereby dismissed with prejudice on the merits and without costs.

LET JUDGMENT BE ENTERED ACCORDINGLY.